HENRIKSEN, J.
This is the Court’s decision on a request for a Review of Commissioner’s Order filed August 12, 2002 by T. L. (“wife”) against W. L. (“husband”). Wife is appealing a Commissioner’s Order dated August 2, 2002 in which the Commissioner dismissed wife’s petition seeking an Order of Protection From Abuse for lack of both personal jurisdiction and subject matter jurisdiction.

FACTS

Based upon a review of wife’s petition, she and husband, together with their two (2) children, W. A. L., a male minor child born September 12, 2000, and K. L., a male minor child born September 1, 2001, resided in the State of Ohio from September 2000 to July 21, 2002. On July 21, 2002, wife left the State of Ohio, taking the parties’ two (2) children with her, and wife and the two (2) children moved in with wife’s mother in Millsboro, Delaware. Two (2) days later, on July 23, 2002, wife filed in the Family Court of the State of Delaware, Sussex County, a Petition for Order of Protection From Abuse. Wife’s petition alleged that husband punched her in the arm and nose, and strangled her, all on the evening of July 15, 2002, which the Court would understand would have allegedly occurred while the parties still lived in Ohio. Wife also alleged that she called the police about this incident.[1] Wife also alleged that husband already had a No Contact Order against him, but wife failed to note any of the specifics of that Order, such as when it was issued, the incidences surrounding its issuance, whether it was *508 an Order based on consent or after a hearing, and whether the Order was still valid and in what state.
In her petition, wife sought the following relief:
1. Prohibit husband from committing any act of abuse against wife or their minor children.
2. Order the husband to stay away from wife, her home, and her workplace.
3. Prohibit husband from contacting or attempting to contact wife in any way, except that he could talk to their son one (1) time a week.
4. Award wife custody and placement of the children.
5. Order husband to pay child support.
6. Order husband to pay $400 per month to wife.
7. Award wife the sole use of the baby crib, entertainment stand, bedroom suit, clothing, television and toys.
Husband’s attorney filed a limited Entry of Appearance for the purpose of contesting jurisdiction. Notice of the hearing was sent by the Court on July 24, 2002 to husband’s Ohio address. The registration card which accompanied the notice indicated that husband received the notice on July 26, 2002. Wife’s attorney acknowledged that service of process on the husband was not attempted under Title 10, Section 3104, the Delaware Long Arm statute.

LAW AND REASONING

I. Manner of Service
The Court will first address which type of service of process is appropriate on a non-resident upon the filing of a Protection From Abuse Petition in the State of Delaware. The more specific question is whether mailing notice to a non-resident pursuant to Title 10, Section 1065 is sufficient; or, is service of process pursuant to the more stringent requirements of Title 10, Section 3104, the Delaware long arm statute, required.
As stated by Chief Justice Layton in McCoy v. Hickman, 15 A.2d 427, 429, (Del.Super.1940), “Judicial process is indispensable to jurisdiction. The law provides two (2) methods of service of process: One is actual service, as by reading the original process to the defendant or delivering to him a copy thereof; the other is substitutional or constructive service, as by leaving a copy of the process at the defendant’s residence when he is absent, or by some form of notice by mail or publication as the statute may direct.”
In the Prybolsky decision dated April 13, 1981, a Family Court support action, the Court held that any purported service by certified mail over a non-resident was ineffective, and that, in order to acquire jurisdiction over the non-resident, it was necessary to accomplish service through Delaware’s long arm statute, Title 10, Section 3104.[2]
At the time of the Prybolsky decision, there was no statute which allowed for substituted service of Family Court support actions, although there was a Family Court Rule which allowed for service by certified mail with return receipt requested. The Family Court Judge correctly held that the Rule alone was not sufficient to provide a jurisdictional means of service; instead, statutory authority was required. As such, at the time of the rendering of the Prybolsky decision, the appropriate statute to obtain jurisdiction over a non-resident defendant was the Delaware long arm statute of Title 10, Section 3104.
*509 Shortly after Prybolsky, the Delaware legislature on July 7, 1981 added what is today’s Title 10, Section 1065 which relates to methods of acquiring personal jurisdiction over parties in Family Court matters of the State of Delaware.[3] The present day Title 10, Section 1065 reads as follows:

(a) Jurisdiction shall be acquired over a party in any civil action by transmitting to the party a copy of the summons and the petition or complaint (the papers) by any of the following methods:

1. By personal service; or

2. By leaving a copy at the party’s dwelling house or usual place of abode with some person of suitable age and discretion residing there; or

S. By any form of mail; or

A In the manner prescribed by court rule; or

5. In the manner directed by the Court, including publication, if other methods of service have failed or are deemed to have been inadequate.

(b) If a party to whom papers have been transmitted by ordinary mail shall fail to appear in the action and there shall be no reliable proof that such party has received notice thereof, then the Court shall order that further effort be made to provide notice to that party which may include notice by certified or registered mail, or by any other method for providing notice specified in subsection (a) above.

(c) Jurisdiction shall be acquired over a minor by any of the above methods directed to the minor and to the minor’s parent, custodian or guardian.

(d) If, for any particular action, another statute or rule adopted pursuant to statute prescribes a method or methods for acquiring jurisdiction over a party, then jurisdiction shall be acquired thereby.

(e) It is not necessary to transmit papers or otherwise provide notice to a party who has entered an appearance in the action.

Thus, the lack of a specific statute for obtaining jurisdiction in Family Court matters which existed at the time of the Pry-bolsky case, had now been cured with the legislature’s provision of a specific statute to obtain personal jurisdiction. Pursuant to the statute, jurisdiction can be obtained both personally, and pursuant to certain alternative methods. One (1) of those alternative methods is by mail.[4] This form of alternative service is only satisfactory where there is “reliable proof that the absent party received notice.[5]
In the present matter, notice of the hearing was sent to the husband by certified mail, and there was clearly reliable proof that the husband received the letter. The wording of Title 10, Section 1065 goes on to require additional methods for providing notice in the event notice was attempted by mail, the party failed to appear, and there was no rehable proof that the party had received the notice.[6] In such situations, the statute goes on to state that further efforts shall be made to provide notice “which may include notice by certified mail or registered mail, or by any other method for providing notice specified in Subsection “a” above.” According *510 to the statute, such additional attempts at giving notice might include publication. Indeed, it might even be prudent for a party to pursue service under the more stringent requirements of the Delaware long arm statute under Title 10, Section 3104.
Although it would appear that the notice mailed and received in the present case was adequate under Title 10, Section 1065, the Court must also consider the wording in the statute which states “If, for any particular action, another statute or rule adopted pursuant to statute prescribes the method or methods for acquiring jurisdiction over a party, then jurisdiction shall be acquired thereby.”[7] Thus, it might be argued that, due to the existence of the Delaware long arm statute under Title 10, Section 3104, the long arm statute should be used. However, if the Court were to give construction to that meaning, it would make useless the passage of Title 10, Section 1065. Given that many of the statutes for actions brought within the Family Court provide a specific means of service, while some do not, the obviously more meaningful interpretation of the wording in Subsection (d) of Title 10, Section 1065 is that Section 1065 is to be used when a more specific method of service is not provided by the specific statute for the specific type of remedy being sought.
There are several examples of specific statutory provisions for obtaining jurisdiction in specific types of Family Court actions. In the area of child support, Title 13, Section 511(b)(1) provides for both personal service, or “by delivering copies thereof to an agent authorized by appointment or by law to receive service of process.” Thus, for a non-resident defendant in a child support action, we return to the use of Title 10, Section 3104, the Delaware long arm statute, where that statute authorizes the Secretary of the State of Delaware to receive the service of process on behalf of the non-resident, so long as the additional provisions of the statute are followed, which include a follow-up letter being sent to the non-resident explaining that service upon the Secretary of State is as effective as if the non-resident had been served personally within the State of Delaware.
Both the Uniform Interstate Family Support Act[8] and the Uniform Parentage Act[9] provide specific means for obtaining jurisdiction by substituted service. Specific directions for obtaining personal service through substituted service in a termination of parental rights matter are set forth in Title 13, Section 1107(c). In obtaining a divorce or annulment, the specific rules for obtaining substituted service are set forth in Title 13, Section 1508.
It should be noted in all of the foregoing sections, some of the statutes contain specific provisions just for non-residents; whereas, some of the statutes for substituted jurisdiction make no distinction between residents and non-residents. Title 10, Section 1065, the general Family Court statute makes no distinction in its substituted service provisions between residents and non-residents. As such, notice given under Title 10, Section 1065, where other specific statutes do not provide specific manners of giving notice, applies to both residents and non-residents.
In all of the foregoing types of controversies, assuming the notice is properly given, the Court must still consider whether there are sufficient minimum contacts by the non-resident to make it reasonable *511 to justify imposing upon that non-resident the burden and inconvenience of appearing before the Courts in the State of Delaware. The Court will address that issue next. But befijre going on, the Court hereby determines that service on the nonresident husband in this action pursuant to notice mailed pursuant to Title 10, Section 1065, where there was reliable proof that such notice was received, was adequate. Thus, on this particular issue, the Court disagrees with the Commissioner’s finding that the manner of notice to husband was insufficient.
II. Due Process — Minimum Contacts
We turn now, however, to the more difficult question: Whether subjecting the non-resident husband to the jurisdiction of a Delaware PFA Order violates his rights under the due process clause of the Fourteenth (14th) Amendment to the United States Constitution, where wife has filed in the State of Delaware just two (2) days after leaving the State of Ohio where she and her husband resided, and, where all of the events of the alleged abuse occurred in the State of Ohio. Having already held that the Family Court jurisdictional statute in this case suffices in place of the “long arm statute”, this Court is satisfied that there has been compliance with the first step at the traditional two-step analysis as to whether or not personal jurisdiction can be obtained over a non-resident party.[10] Pursuant to the second step of this due process analysis, the Court must consider whether the non-resident party had sufifi-cient “minimum contacts” with the State of Delaware so the jurisdiction over the nonresident “... does not offend traditional notions of fair play and substantial justice.” [11]
To understand this concept of “traditional notions of fair play”, it has always been understood that for a judgment which imposes a personal obligation or duty upon an individual to be found valid, it may be entered only by a Court having jurisdiction over the person of the defendant.[12] Where a person is served with a notice within the boundaries of the State, personal jurisdiction has been accomplished. But where the defendant is a non-resident who has not been served within the boundaries of the state, personal jurisdiction also depends upon the reasonableness of the notice given to the out-of-state defendant.[13] The Court must also look at whether there is a sufficient connection between the non-resident defendant and the State of Delaware to make it fair to require the non-resident to appear and defend in the State of Delaware.[14] In other words, are there sufficient “minimum contacts”.
The determination as to whether or not there are sufficient minimum contacts to make it reasonable to justify imposing upon a non-resident the burden and inconvenience of appearing in the State of Delaware is not set to any clear test. Instead, the facts of each case must be reviewed, and there may also be “affiliating circumstances” which must be considered.[15]
*512 The jurisdictional decisions dealing with non-resident defendants of the several landmark cases from International Shoe [16] through Hanson v. Denckla[17] are easiest to understand in the context of an individual suing another for a debt, a breach of contract, or an injury. In the case of the non-resident who may owe money to the Delaware resident, either on a debt or breach of contract, where all activities occurred in the non-resident’s state, it is easy to see that it would be unfair to expect the non-resident to have to come to the State of Delaware to defend a suit brought against the non-resident by the now Delaware resident. In such a situation, the Delaware resident should file suit against the non-resident in the non-resident’s state. Likewise, if one buys a product in another state which is only locally made in that other state and not marketed in Delaware, it would only make sense that the injured party who was harmed by the use of that product obtain redress by filing suit in the state where the product was made and sold. However, where a company manufactures a product outside of the State of Delaware and then makes a purposeful and intentional effort to bring the product to Delaware, the Delaware resident injured by the use of the product should then be able to sue the non-resident either in the non-resident’s state, or in the State of Delaware, because the non-resident, by its purposeful intent to bring its product into the State of Delaware, has formed minimum contacts with the State of Delaware.
The issue, however, becomes more clouded when we discuss marriage, and marriage-related issues of custody, child support, property division, and alimony, where it is not uncommon for parties to separate and move to different states. Delaware has for quite some time recognized marriage as a “status”. As Justice Woolley once wrote in the Cohen decision, “Marriage, therefore, is not a contract, but it is a relation or status defined and established by law. Into this relation people may contract to enter. But the relation itself being vital to society, the state as organized society assumes and asserts the authority to fix or control the rights and obligations of those who choose to enter it, and decides for them how the relation may be commenced, continued and determined.” [18] In the Cohen case, which upheld the right of the State of Delaware to divorce foreign subjects domiciled within its borders from a marriage performed and established elsewhere, Justice Woolley held, “The right of the plaintiff to seek and obtain a dissolution of his marriage relation is permitted because of his qualification as ‘a bona fide resident of this state’ for the prescribed time, and because of the state’s right to regulate and control the marital status of such a resident. The fact that the defendant, the other party to this marriage relation, is like her husband a foreign subject, but, unlike him, is not a resident of or domiciled in the state, and is therefore beyond the reach of its authority and control of its laws, does not and cannot hinder the state in determining the status of the resident over whom it has jurisdiction and with respect to whom it may enforce its decrees.” This Court takes special notice of the emphasis Justice Woolley placed on the party seeking *513 relief from the Delaware Court to be a “bona fide resident of the state”.
Although a spouse, assuming they have satisfied the necessary resident and separation requirements set forth in the Delaware statutes[19], can obtain a divorce from a non-resident spouse which affects the status of the marriage, the Delaware Court, without some minimum contact relationship of the other spouse with the State of Delaware, is unable to make an award affecting property division, alimony, or child support which would specifically place a burden and obligation on the nonresident party.[20] In fact, despite the substantial interest of the State of California in protecting resident children and in facilitating child support actions on behalf of those children, the United States Supreme Court in the Kulko case required the State of California to show minimum contacts within the state by the support obligor before California could be considered a “fair forum” to hear the case.[21] Fortunately, most states, like Delaware, have adopted uniform acts of support and custody which are somewhat specific in addressing these jurisdictional problems.
Where, as in this case, another state clearly has the requisite information and witnesses to most fairly decide the allegations between the parties, this Court also has concerns that Delaware’s well intended protection from abuse statute could be misused by one party in an attempt to gain a quick and unfair advantage, especially in matters such as custody.
Just as the United States Supreme Court in the Kulko case weighed the interest of the state towards protecting children and obtaining child support against an individual’s rights of due process, this Court must weigh an individual’s rights of due process against Delaware’s strong interest in preventing abuse, and the necessity for taking prompt action.[22] On July 8, 2002, Delaware adopted its version of the Uniform Interstate Enforcement of Domestic Violence Protection Orders Act, which adds emphasis to Delaware’s already noted commitment to the prevention of domestic violence.[23] Pursuant to this law, Delaware registers and enforces valid Protection Orders from other states. Likewise, Delaware expects its Orders to be enforced by other reciprocal states. The act even requires Delaware police agencies to enforce Orders of other states where they have a copy of the Order, and the Order appears valid. The statute specifically states that a foreign Protection Order is valid if it, among other things, “.. .was issued by a tribunal that had jurisdiction over the parties and subject matter and also where the respondent was given notice and an opportunity to be heard consistent with the rights of the respondent to due process ”.[24] The caveat that Courts in Delaware must heed, is that Delaware Courts must be sure that fairness was considered for all parties, especially rights of due process, where such Orders may drastically affect the rights of an individual in another state, especially in another state where that party resides. In addition to *514 Delaware’s recent adoption of the Uniform Interstate Enforcement of Domestic Violence Protection Orders Act, only recently adopted by Delaware and with only a few other states participating[25], the full faith and credit clause of the Federal Domestic Violence and Stalking Act also requires that states give full faith and credit to the Orders of other states or Indian tribes.[26] As with the Uniform Interstate Act, the Federal law cautions against violations of rights of due process.[27]
Having considered all of the above, the Court has two (2) very basic concerns. First, when Delaware Courts in the status situation to solely grant a divorce have lowered their minimum contact requirements, it has been for the protection of bona fide residents of the State of Delaware. In this case, wife sought the protection of a Delaware Protection From Abuse Order only two (2) days after leaving the State of Ohio. Secondly, except for the presence of husband’s wife and children in the State of Delaware for a period of two (2) days upon the filing of a petition, none of the factual allegations alleged in wife’s petition occurred in the State of Delaware, and there are no other allegations made in the petition which would suggest husband had such minimum contacts with the State of Delaware to make it fair and reasonable to expect husband to have to come to Delaware to defend against the petition. Instead, it would appear more appropriate that any relief that wife would seek for protection from abuse should be determined by the State of Ohio, and, furthermore, any actions concerning the custody of the children should also be dealt with in the State of Ohio under the Uniform Act.[28] The Court’s decision might be different had the petition alleged that husband had pursued the family into Delaware while making additional threats and placing wife and children in fear of harm, but that was not the case. Thus, under the given facts of this ease, husband’s rights of due process vastly outweigh the state’s legitimate concerns to protect its residents and children from domestic violence.
The Court notes that the Supreme Court of Iowa recently took what may be argued an opposite approach apparently favoring the state’s strong interest of giving prompt action to preventing abuse over rights of due process.[29] In the Iowa case, wife filed for a Protection From Abuse Order in the State of Iowa approximately one (1) month after wife moved from Colorado to Iowa. Husband resided in Colorado, and husband received letter notice of the pendency of the action. The Iowa Court held that the husband did not have sufficient minimum contacts for personal jurisdiction, but also held that personal jurisdiction over a non-resident defendant was not required for the Iowa Court to enter an Order preserving to protect the status afforded Iowa residents against domestic harm. The case is distinguishable from the present facts in that husband *515 argued in the Iowa case that most of wife’s allegations of abuse occurred in the State of Utah, where neither of the parties presently lived. Since neither of the parties lived in the state where most the allegations would have occurred, the Iowa Court found it reasonable for Iowa to proceed with the case. Two (2) Justices, including Iowa’s Chief Justice, dissented in the opinion when they stated “Although, as the majority notes, the State dearly has an important interest in fostering protection against domestic abuse, its power to do so does not extend to granting Protective Orders against persons lacking the requisite minimum contacts with the foreign state.”[30] The Iowa dissent felt that there had been “a direct invasion of [husband’s] liberty interest”, and further noted that husband would suffer “collateral consequences of a lasting nature ”, including the requirement to surrender firearms pursuant to 18 U.S.C. Section 922(g)(8).
In another less recent decision, the Minnesota Court of Appeals upheld its jurisdiction to grant a mother’s request for an Order of Protection on behalf of her child, who had allegedly been physically abused by the non-resident father on out-of-state visits.[31] Although father had never lived in Minnesota, owned property in Minnesota, transacted business in Minnesota, nor even visited Minnesota, the child would visit father every summer in father’s state where the abuse to the child allegedly occurred. According to the decision, Minnesota’s long arm statute states: “A Minnesota Court may exercise personal jurisdiction over a non-resident defendant if that defendant commits an act outside of Minnesota causing injury in Minnesota”. In Minnesota apparently, the standard for determining whether a tort is committed in Minnesota is whether damage from the alleged tortuous conduct results in Minnesota. Thus, even though the alleged abuse occurred outside of the State of Minnesota, the young boy’s injuries manifested themselves within the state, and the Minnesota Court, under the Minnesota long arm statute, held that this was sufficient for jurisdiction to attach.
When reviewing Delaware’s “long arm statute”, the language regarding tortuous injury is different than the language contained in the Minnesota act. The two (2) pertinent sections of the Delaware act in Title 10, Section 3104(c) read as follows: (3) Causes tortuous injury in the state by an act or omission in this state, or (4) Causes tortuous injury in the state or outside of the state by an act or omission outside the state if the person regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from services, or things used or consumed in the state. Delaware’s law is very specific to require that the tortuous injury caused in the state be caused by an act or omission, also caused within the state. Where the act allows for tortuous injury caused outside of the state by an act or omission outside of the state, it is limited to the specific situations involving business, derivation of revenue, or use or consumption of items.

CONCLUSION AND ORDER

Based upon the foregoing, the Court concludes that service upon the non-resident spouse by his clearly proven receipt of a notice sent pursuant to Title 10, Section 1065 was a sufficient and reasonable form of notice. However, the non-resident husband lacked the minimum contacts with the State of Delaware to make it reasonable for him to have to appear and defend *516 in the State of Delaware, especially where wife had just moved into the State of Delaware, and could have sought a remedy in her state of prior residence, which is where all significant facts and witnesses would be located. Although the State of Delaware clearly has an important interest in fostering the protection against domestic abuse, its power to do so should be tempered to be sure that it is serving bona fide residents and not extending protective Orders against persons lacking requisite minimum contacts with the state.
Accordingly, although the Court reverses the Commissioner’s Order in part, the overall affect of this decision is that the Commissioner’s Order is AFFIRMED.
IT IS SO ORDERED.

. At the hearing before the Commissioner on August 2, 2002, wife attempted to supplement the record to include a general allegation that prior abuse had occurred in the State of Delaware. However, the Commissioner correctly limited her decision to the allegations made in wife's petition, where the only specific allegations involved incidents which occurred in the State of Ohio.

. Prybolsky v. Prybolsky, 430 A.2d 804 (Del.Fam.Ct.1981).

. 63 Del. Laws, c. 113, § 1.

. Tit. 10, § 1065(a)(3).

. Tit. 10, § 1065(b).

. Tit. 10, § 1065(b).

. Tit. 10, § 1065(d).

. Tit. 13, § 610.

.Tit. 13, § 810.

. LaNuova D & B, S.p.A v. Bowe Co. Inc., 513 A.2d 764, 768 (Del.Supr.1986).

. Int’l Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

. Pennoyer v. Neff, 95 U.S. 714, 732-733, 24 L.Ed. 565 (1877).

. Mullane v. Central Hanover Trust Co. 339 U.S. 306, 313-314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

. Milliken v. Meyer, 311 U.S. 457, 463-464, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

. Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

. Int’l Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

. Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

. Cohen v. Cohen, 84 A. 122 (Del.Super.1912).

. Tit. 13, § 1504 and 1505.

. Cottone v. Cottone, 547 A.2d 625 (Del.Fam.Ct.1988), also citing Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948) on the concept of “divisible divorce”.

. Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

. See State v. Manista, 651 A.2d 781 (Del.Fam.Ct.1994).

. Tit. 10, § 1049A.

. Tit. 10, § 1049B(d)(3, 4).

. California, Montana and Texas also have adopted the Uniform Interstate Enforcement of Domestic Violence Protection Orders Act.

. 18 U.S.C.A. Pt. I Ch. 110A, Sec. 2265(a).

. 18 U.S.C.A. Pt. I Ch. 110A, Sec 2265(b)(2).

. Delaware's Uniform Child Custody Jurisdiction Act could allow the granting of a Temporary Order in an emergency situation, but the Order would only be effective until jurisdiction was assumed by the Ohio Court. Title 13, Section 1903(3) under Delaware's newly enacted Uniform Child Custody Jurisdiction and Enforcement Act, which became effective September 1, 2002, offers similar temporary relief in the event of an emergency, until the "home state'' could assume jurisdiction. (Tit. 13, § 1923).

. Bartsch v. Bartsch, 636 N.W.2d 3 (Iowa Supr.2001).

. Id. at 12.

. Hughs v. Cole, 572 N.W.2d 747 (Minn.App.1997).