Kenneth SPENCER, Appellant,

v.

Ava SPENCER, Appellee.

No. 2005–CA–001419–ME.

Court of Appeals of Kentucky.

April 14, 2006.

David A. Lamphear, Bowling Green, KY, for appellant.

No Brief Filed for appellee.

Before GUIDUGLI and JOHNSON, Judges; HUDDLESTON, Senior Judge.[1]

*OPINION*

HUDDLESTON, Senior Judge.

Kenneth Spencer appeals from a domestic violence order issued by Warren Circuit

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Court. We are asked to decide whether under Kentucky Revised Statutes (KRS) 403.725(1), a provision of Kentucky's domestic violence statute, a Kentucky court may issue a protective order against an individual over whom the court does not have personal jurisdiction.

This case concerns a married couple, Ava and Ken Spencer, who resided in Oklahoma until shortly before the commencement of this action. Ken allegedly subjected Ava and their seven-year-old son, Morgan, to intimidation and physical abuse. On May 21, 2005, Ken flew to Las Vegas. He testified that the family had been planning to move there, and his trip was intended as an opportunity for him to find employment and a residence before Ava and Morgan joined him. According to Ava, she saw Ken's trip to Las Vegas as an opportunity to escape from the domestic abuse. She and Morgan traveled to Kentucky on May 22, 2005, to stay with a close friend. On May 23, 2005, Ava filed a domestic violence petition in Warren Circuit Court. The court issued on Emergency Protective Order on the same day, granting immediate relief, including restraining Ken from any contact or communication with Ava, and granting her temporary custody of Morgan. The court also summoned Ken to appear in Warren Circuit Court and assigned the Clark County, Nevada, Sheriff's Department as the agency for service of process. Ken was accordingly served in Nevada.

On June 6, 2005, Ken, through counsel, filed a Special Entry of Appearance and Motion to Dismiss for Lack of Jurisdiction, arguing that a Kentucky court could not constitutionally exercise personal jurisdiction over him because he had no contact with the state. After the hearing, at which Ava testified and Ken testified via telephone, the court announced that it would enter an Order of Protection. When Ken's counsel asked the court to explain what minimum contacts Ken had with the Commonwealth of Kentucky, the judge explained that she was basing her decision on KRS 403.725(1), which permits entry of such an order if "she [Ava] has fled to this state for protection." This appeal followed.

Ken argues that the court did not have personal jurisdiction over him. At the time of the proceedings, the parties were Oklahoma residents, and the alleged abuse took place in Oklahoma. Ken was served with the emergency order of protection and summons in Nevada and testified that he intends to remain there. Ken has not visited Kentucky since the mid–1980s. Although Ava was born in Kentucky, she left when she was a child and had not returned for thirty-five years before her arrival on May 22, 2005.

■ Our first step must be to determine whether Warren Circuit Court had personal jurisdiction over Ken. Kentucky has adopted a three-pronged test to determine personal jurisdiction.[2] The first prong of the test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence in the forum state. The second prong considers whether the cause of action arose from the alleged in-state activities. The final prong requires such connections to the state as to make jurisdiction reasonable.[3] "Each of these three criteria represents a separate requirement, and jurisdiction will lie only where all

---

**2.** *See Wilson v. Case,* 85 S.W.3d 589 (Ky. 2002).

**3.** *Id.* at 593, *citing Tube Turns Div. of Chemetron Corp. v. Patterson Co., Inc.,* 562 S.W.2d 99, 100 (Ky.App.1978).

three are satisfied." [4]

■ When this three-pronged test is applied to the circumstances of this case, we can only conclude that Warren Circuit Court did not have personal jurisdiction over Ken. Ken did not purposely avail himself of the opportunity of acting within Kentucky, or causing consequences within Kentucky; the cause of action did not arise from activities in Kentucky; and Ken does not have any connections to this state that would make jurisdiction reasonable.

■ Yet the language of KRS 403.725 clearly envisions a court granting a protective order when a victim of domestic abuse has fled to this state. According to the relevant statutory provision,

> [a]ny family member or member of an unmarried couple who is a resident of this state or has fled to this state to escape domestic violence and abuse may file a verified petition in the District Court of the county in which he resides. If the petitioner has left his usual place of residence within this state in order to avoid domestic violence and abuse, the petition may be filed and proceedings held in the District Court in the county of his usual residence or in the District Court in the county of current residence. Any family member or member of an unmarried couple who files a petition for an emergency protective order in District or Circuit Court shall make known to the court any custody or divorce actions, involving both the petitioner and the respondent, that are pending in any

Circuit Court in the Commonwealth. The petition shall also include the name of the court where filed.[5]

Commentators have recently observed that KRS 403.725(1) permits Kentucky residents to file for domestic violence protection, and it also expressly allows similar filings by persons who have fled to this state to escape domestic violence and abuse. The statute has no durational residency requirement comparable to the one-hundred eighty day residency requirement of the divorce statute.[6] The lack of a residency requirement, when added to the specific language relating to persons fleeing to Kentucky, creates a "safe harbor" statute, namely one that is intended to protect any victim who is physically present in Kentucky and threatened with harm.[7]

The conflict arises when such an order is issued against a defendant like Ken who has no minimum contacts with Kentucky. We must balance the due process rights of the defendant against the interest of the Commonwealth in protecting the victims of domestic violence.[8] The scope of jurisdiction of a court issuing protective orders under these circumstances is an issue of first impression in Kentucky. We have turned therefore to the case law of other jurisdictions.

In Delaware, where the domestic abuse statute does not contain a "safe harbor" provision, the Family Court confronted a factual scenario similar to that before us, where the wife was not a *bona fide* resi-

---

**4.** *Id., citing LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir.1989).

**5.** KRS 403.725(1).

**6.** KRS 403.140.

**7.** Louise E. Graham and Hon. James E. Keller, 15 Kentucky Practice Series, Domestic Relations Law, § 5.2 (2006).

**8.** *See Barnett v. Wiley*, 103 S.W.3d 17, 19 (Ky.2003) ("the domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence").

dent of Delaware and the husband against whom the order was issued had no contact with Delaware whatever.[9] The court observed that the issue of personal jurisdiction "becomes more clouded when we discuss marriage, and marriage-related issues of custody, child support, property division, and alimony, where it is not uncommon for parties to separate and move to different states."[10] The court further acknowledged that Delaware's divorce statutes permit a *bona fide* resident of the state to obtain a divorce without personal jurisdiction over the respondent, on the grounds that a state has the right to regulate and control the marital status of its residents. Significantly, however, the state may not make awards affecting property division, alimony, or child support that would specifically place a burden and obligation on the non-resident party. The court concluded that

> [a]lthough the State of Delaware clearly has an important interest in fostering the protection against domestic abuse, its power to do so should be tempered to be sure that it is serving bona fide residents and not extending protective Orders against persons lacking requisite minimum contacts with the state.[11]

By contrast, the Iowa Supreme Court in *Bartsch v. Bartsch*[12] held that personal jurisdiction over a nonresident husband was not required for the entry of a protective order, likening it to a child custody determination. Significantly, however, the wife in *Bartsch* was an Iowa resident.

Finally, in *Shah v. Shah*,[13] the Supreme Court of New Jersey addressed a situation where a wife had sought refuge in New Jersey, filing a complaint under New Jersey's Prevention of Domestic Violence Act against her husband who resided in Illinois. The relevant provision of the New Jersey Act is similar to KRS 403.725(1) in that it specifically provides that a domestic violence complaint can be brought "in a court having jurisdiction over the place . . . where the plaintiff resides or is sheltered."[14]

In its opinion, the court drew a distinction between a prohibitory order that serves to protect the victim of domestic violence, and an affirmative order that requires that a defendant undertake an action.

> The former, which allows the entry of an order prohibiting acts of domestic violence against a defendant over whom no personal jurisdiction exists, is addressed not to the defendant but to the victim; it provides the victim the very protection the law specifically allows, and it prohibits the defendant from engaging in behavior already specifically outlawed. Because the issuance of a prohibitory order does not implicate any of defendant's substantive rights, the trial court had jurisdiction to enter a temporary restraining order to the extent it prohibited certain actions by defendant in New Jersey.[15]

An affirmative order, on the other hand, involves the court attempting to exercise its coercive power to compel action by a defendant over whom the court lacks per-

---

9. *See T.L. v. W.L.*, 820 A.2d 506 (Del.Fam.Ct. 2003).

10. *Id.* at 512.

11. *Id.* at 516.

12. 636 N.W.2d 3 (Iowa 2001).

13. 184 N.J. 125, 875 A.2d 931 (2005).

14. *Id.* at 937, *citing* N.J. STAT. ANN. 2C:25–28a (1991).

15. *Id.* at 939.

sonal jurisdiction.[16]

The court held that minimum contacts considerations forbid the entry of a final restraining order because by statutory definition it had to include affirmative relief, such as the surrender of firearms and firearm permits, the payment of a civil penalty, and surcharge, and collateral consequences such as enrollment in a central offenders registry.

 In our view, the distinction made by New Jersey's highest court between prohibitory and affirmative orders represents the fairest balance between protecting the due process rights of the nonresident defendant and the state's clearly-articulated interest in protecting the plaintiff and her child against domestic violence.

The order entered by Warren Circuit Court in this case stated that "Respondent is restrained from any contact or communication with the above-named Petitioner" and that "Respondent shall remain at all times and places at least 1,000 feet away from Petitioner and members of Petitioner's family or household." Respondent was "restrained from disposing of, or damaging, any property of the parties." The order also included provisions forbidding the possession, transportation, shipping and receiving of any firearm or ammuni-

tion. A copy of the order was forwarded to the law enforcement agency/dispatch center responsible for entry into LINK, the computerized law enforcement system. Ava was awarded temporary custody of Morgan, and Ken was ordered to attend domestic violence counseling. The court also verbally ordered Ken to pay child support in the amount of $60.00 per month.

Insofar as the order prohibits Ken from breaking the law in Kentucky by approaching Ava or Morgan, it comports with due process. In all other respects, it goes beyond the permissible limits of Kentucky courts' jurisdiction. We recognize that the passage of time since the entry of the order may well mean that the circuit court now has jurisdiction to make custody and status determinations if Ava has continued to reside in Kentucky.

The order from which this appeal is taken is vacated, and the case is remanded to Warren Circuit Court for further proceedings in accordance with this opinion.

ALL CONCUR.

---

16. *Id.*