RENDERED:  AUGUST 19, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1343-ME

SCOTT DUNBAR                                                                APPELLANT


APPEAL FROM JEFFERSON FAMILY COURT
v.       HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 21-D-503425-001


ODELIN VIDAL                                                                  APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, JONES, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Scott Dunbar appeals from the Jefferson Family Court's order maintaining the imposition of an emergency protection order (EPO) in favor of Odelin Vidal for sixth months; Dunbar argues the EPO should have been dismissed for lack of personal jurisdiction over him.

On October 2, 2021, Vidal filed a petition for an order of protection based upon allegations of domestic violence that took place in Indianapolis,

Indiana, on September 30, 2021. Later that day, the Jefferson District Court granted a temporary interpersonal protective order (TIPO) and scheduled a virtual hearing to consider whether an interpersonal protective order should be granted.

On October 14, 2021, only Vidal appeared as Dunbar had not yet been served. Based on Vidal's representation that she and Dunbar had previously lived together, the district court transferred the matter to family court for consideration as to whether a domestic violence order (DVO) was warranted.

At the next scheduled hearing, on October 26, 2021, Dunbar appeared virtually with counsel before the family court, but Vidal did not appear. The docket order indicated Vidal was told she did not have to appear because Dunbar had not yet been served. Dunbar immediately raised an objection to the family court's having jurisdiction over him, but the family court determined this should be heard at the next hearing.

At the November 9, 2021 virtual hearing, finally both parties appeared. Dunbar again raised his jurisdictional objections, stating that all of the alleged acts of domestic violence occurred in Indiana and he had no minimal contacts with Kentucky as he did not live in Kentucky or transact any business in Kentucky. Dunbar argued the family court did not have personal jurisdiction over him based upon *International Shoe Company v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90

-2-

L.Ed. 95 (1945), and that bringing him before a Kentucky court offended his due process rights.

The family court stated that pursuant to Kentucky Revised Statutes (KRS) 403.725, it could appropriately act where the victim of domestic violence either resided within or fled to the state of Kentucky. Dunbar argued this was incorrect, as that statute only dealt with venue.

The family court responded: "Well, I certainly appreciate the arguments and you can perhaps take it up with the Court of Appeals after we're done, but we're going to go ahead and proceed with this hearing." The family court then heard testimony from the parties and exhibits were admitted into evidence.

At the conclusion of the evidence, the family court made findings that domestic violence had occurred and may occur again based on specific incidents Vidal testified occurred and the threats Dunbar made to her. The family court explained it believed that the relationship between the parties was over and they should stay away from each other, but that it preferred to try to avoid issuing a DVO unnecessarily. The family court therefore ruled that the EPO would continue until it expired on April 2, 2022, which was appropriate to address the aftermath of this short-term relationship, "let the dust settle," and keep everyone safe.

The family court via a docket order summarized its findings and decision. It denied Dunbar's "ongoing personal j'n concerns/objections" on the basis that Vidal "fled to KY from IN to escape domestic violence[.]" It stated: "EPO remains in place until its expiration 4-2-2022, given the need for short-term protection. Ct adopts its oral findings put on the record as though fully set forth herein."

Dunbar argues on appeal that the family court's maintenance of the EPO should be reversed, with the case dismissed for lack of personal jurisdiction. He argues it is undisputed that based on his and Vidal's testimony that Dunbar had no contacts with Kentucky and there was no nexus between Kentucky and the facts underlying the domestic violence petition other than the fact that afterward Vidal came to Kentucky for safety. He argues that venue cannot be bootstrapped into providing personal jurisdiction and states that the question on appeal is whether the due process required for personal jurisdiction can be usurped by the domestic violence venue statute. Dunbar notes that the EPO would likely expire before this matter is reviewed on appeal but asks that it still not be dismissed as moot because it is capable of repetition and evading review. Vidal did not file a responsive brief.

We will address Dunbar's appeal on the merits as we agree that the issuance and expiration of an EPO against him before it can be heard on appeal is capable of repetition and evading review. *See generally Morgan v. Getter*, 441

-4-

S.W.3d 94, 100 (Ky. 2014). We disagree, however, that Dunbar is entitled to relief.

While we acknowledge the import of *International Shoe Company* and *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011), and the limited reach of our long-arm statute, KRS 454.210, domestic violence orders are different from the typical case in that they are meant to prevent future violence against victims rather than to punish or provide compensation for past actions. Our Courts are allowed to govern behavior within our borders to prevent harm to victims of out-of-state domestic violence.

The case of *Spencer v. Spencer*, 191 S.W.3d 14, 18-19 (Ky. App. 2006), which Dunbar did not address, controls. In *Spencer*, our Court was tasked with deciding whether under KRS 403.725(1) "a Kentucky court may issue a protective order against an individual over whom the court does not have personal jurisdiction." *Spencer*, 191 S.W.3d at 16. The Court had no trouble in concluding that Kentucky courts did not have personal jurisdiction over the husband where the alleged abuse took place in Oklahoma between Oklahoma residents and the husband was now a Nevada resident but noted that "the language of KRS 403.725 clearly envisions a court granting a protective order when a victim of domestic abuse has fled to this state." *Id*. at 17.

The *Spencer* Court explained "[w]e must balance the due process rights of the defendant against the interest of the Commonwealth in protecting the victims of domestic violence" and it reviewed this issue of first impression by considering the case law of other jurisdictions before adopting the reasoning of New Jersey in *Shah v. Shah*, 875 A.2d 931 (N.J. 2005). *Spencer*, 191 S.W.3d at 17-19 (footnote omitted). The Court recounted that in *Shah*:

> In its opinion, the court drew a distinction between a prohibitory order that serves to protect the victim of domestic violence, and an affirmative order that requires that a defendant undertake an action.
>
> > The former, which allows the entry of an order prohibiting acts of domestic violence against a defendant over whom no personal jurisdiction exists, is addressed not to the defendant but to the victim; it provides the victim the very protection the law specifically allows, and it prohibits the defendant from engaging in behavior already specifically outlawed. Because the issuance of a prohibitory order does not implicate any of defendant's substantive rights, the trial court had jurisdiction to enter a temporary restraining order to the extent it prohibited certain actions by defendant in New Jersey.
>
> An affirmative order, on the other hand, involves the court attempting to exercise its coercive power to compel action by a defendant over whom the court lacks personal jurisdiction.
>
> The court held that minimum contacts considerations forbid the entry of a final restraining order because by statutory definition it had to include affirmative relief, such as the surrender of firearms and firearm permits, the

payment of a civil penalty, and surcharge, and collateral consequences such as enrollment in a central offenders registry.

In our view, the distinction made by New Jersey's highest court between prohibitory and affirmative orders represents the fairest balance between protecting the due process rights of the nonresident defendant and the state's clearly-articulated interest in protecting the plaintiff and her child against domestic violence.

*Spencer*, 191 S.W.3d at 18-19 (footnotes omitted).

While the language of KRS 403.725 was amended after *Spencer*, it still provides in KRS 403.725(2) that "[t]he petition may be filed in . . . a county where the victim has fled to escape domestic violence and abuse."[1] We interpret this language broadly to fulfill the purposes of our domestic violence statutes in allowing victims to obtain "short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible;" and

---

[1] We agree with the reasoning in *Vernooy v. Sullivan*, No. 2016-CA-000446-ME, 2017 WL 3446977, at *2 (Ky.App. Aug. 11, 2017) (unpublished), but do not cite it as authoritative, that in amending this statute and moving the relevant language from KRS 403.725(1) to KRS 403.725(2), there is

no indication that the General Assembly intended to alter the prior law or to limit the entry of a DVO to only when the acts of domestic violence occurred in Kentucky and involved Kentucky residents. Considering the current language of KRS 403.725(2), and in the absence of a clearer statement from the legislature, we conclude that a Kentucky court retains jurisdiction to enter a DVO for the protection of a person who has fled to this state to escape domestic violence.

also providing law enforcement officers with the means to protect victims. KRS 403.715(1), (2), and (3).

The EPO prohibited Dunbar from having any communication with Vidal, ordered him to remain 500 feet away from her, and prohibited Dunbar from engaging in any third-party contact, social media contact, or text messaging with Vidal for a period of six months.[2] "Insofar as the order prohibits [Dunbar] from breaking the law in Kentucky by approaching [Vidal], it comports with due process." *Spencer*, 191 S.W.3d at 19.

Had Dunbar violated the EPO by approaching Vidal in Kentucky or committing further acts of domestic violence against her here, he would have freely subjected himself to the authority of Kentucky and the possible consequences of such actions. Apparently, Dunbar did not violate the EPO as Vidal failed to file for a DVO before the EPO expired and did not file an appellate brief. Therefore, it appears that the EPO properly served its purpose.

Accordingly, we affirm the Jefferson Family Court's imposition of the limited EPO protecting Vidal as not violating Dunbar's due process rights.

ALL CONCUR.

---

[2] The order also restrained Dunbar from disposing of or damaging any property of the parties, but as there was no allegation that Dunbar had any property of Vidal's or joint property of theirs in his possession, that provision is a nullity.

BRIEF FOR APPELLANT:        NO BRIEF FOR APPELLEE.

J. Bart McMahon
Louisville, Kentucky