RENDERED:  MARCH 29, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1038-ME

JUSTIN ALDAVA                                                          APPELLANT

v.        APPEAL FROM JEFFERSON CIRCUIT COURT
          HONORABLE ANGELA JOHNSON, JUDGE
          ACTION NO. 20-D-503107-001

ALYSSA BAUM                                                            APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND TAYLOR, JUDGES.

ACREE, JUDGE:  Appellant, Justin Aldava, appeals the Jefferson Family Court's

August 10, 2023 Orders granting a Domestic Violence Order (DVO) to Appellee,

Alyssa Baum, and denying Appellant's motion to dismiss pursuant to CR[1] 12.02(b)

for lack of personal jurisdiction.  We conclude the Jefferson Family Court lacked

personal jurisdiction of Appellant and, consequently, certain portions of the DVO

---

[1] Kentucky Rules of Civil Procedure.

entered against him impermissibly violated his Due Process rights. Accordingly, we vacate and remand for further proceedings.

## BACKGROUND

Aldava and Baum are not married but together conceived a child. Until just before Baum initiated this action, all three lived in Texas. The incident Baum cites as initiating a change in that fact occurred on October 12, 2020.

According to Baum, she and the child were riding as passengers in a vehicle Aldava was driving. They took the trip to pick up Aldava's motorcycle from where it was being repaired. Aldava began verbally abusing Baum and driving erratically. (Record (R.) at 2.)

Once Aldava retrieved his motorcycle, Baum drove away in the vehicle. She went to the house of a friend who was willing to watch the child for a few hours, and then proceeded to the location of a fifth-wheel camper Aldava and Baum were remodeling. Aldava met her at the camper and again became verbally abusive. Baum alleges he became physical.

Sometime thereafter, Aldava's employer assigned him to work away from home. Baum took the opportunity to flee Texas with the child for her parent's residence in Bullitt County. They arrived on November 22, 2020 and have been there ever since. (R. at 7.)

Eight days after arriving in Kentucky, on November 30, 2020, Baum filed a petition for a protective order against Aldava in the Jefferson Family Court. In her initial petition, Baum sought an emergency protective order (EPO) and temporary custody of their minor child. It is unclear to this Court why Baum filed the petition in Jefferson County and not Bullitt County, the county to which she fled. The petition recounted the events in Texas on October 12, 2020, described above, but also says Aldava has several pending and/or past criminal charges, including misdemeanor domestic violence charges, aggravated robbery, and association with organized crime.

The Jefferson Family Court granted Baum's petition the same day she filed it, entering an EPO against Aldava and awarding temporary sole custody of their minor child to Baum. After entering the EPO *ex parte*, the Jefferson Family Court issued multiple summonses that Baum attempted to serve on Aldava. All these attempts failed.

Notwithstanding that Aldava was not served,[2] the Jefferson Family Court held a domestic violence hearing on April 7, 2021, without Aldava present, to determine whether to enter a DVO. At the conclusion of the hearing, the family

---

[2] Baum asserts in her brief that someone told her legal counsel that Aldava had been served prior to this hearing. (Appellee's brief, p. 4.) It may be true that Aldava was aware of the Kentucky legal action. However, we are constrained to the facts established by the certified record which shows "EPO never served." (R. 81.)

court issued a DVO: (1) prohibiting Aldava from contacting Baum or the minor child and from being closer to them than 500 feet; (2) prohibiting Aldava from possessing firearms; and (3) granting temporary sole custody of the child to Baum.

Once Aldava learned of the DVO, he hired Kentucky legal counsel who filed a motion to vacate the DVO pursuant to CR 60.02. Aldava also informed the family court of a separate but related child custody matter pending in a Texas court that determined the temporary custody of the minor child in favor of Aldava.[3]

---

[3] According to an order entered in *Alyssa Baum v. Justin Aldava*, No. 21-CI-500526 (Jefferson Fam. Ct., Div. 1, Nov. 23, 2022):

- On December 14, 2020, Aldava filed a custody action in a Texas court.

- On January 26, 2021, the Texas court held a hearing without Baum's presence and granted Aldava temporary custody of the minor child.

- On March 2, 2021, Baum filed a custody action in Jefferson Family Court.

- On May 3, 2021, Baum filed a motion for a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) conference between the Kentucky Court and the Texas Court so that appropriate subject matter jurisdiction could be determined.

- The Kentucky court determined it "may not exercise Initial Jurisdiction or Jurisdiction to Modify under UCCJEA but does exercise Emergency Jurisdiction pursuant to Baum's EPO request. This Court notes that if Texas, or any other state, could be said to have initial jurisdiction under UCCJEA at the time of filing, that jurisdiction would supersede the emergency jurisdiction, and the case would continue in that forum."

- The court further determined that "Kentucky, as the only state with any level of jurisdiction, has priority to hear this case and retained jurisdiction."

We take judicial notice of this court order but make no judgment regarding any of it. We reference the order only for a more complete background not presented in the certified record in this case.

The family court heard arguments and then ruled on Aldava's CR 60.02 motion on October 5, 2022. The order did not set aside the DVO but did set a new hearing date to revisit Baum's DVO petition.

Prior to that new hearing, Aldava moved to dismiss for lack of personal jurisdiction pursuant to CR 12.02(b). Aldava argued this Court's reasoning in *Spencer v. Spencer*, 191 S.W.3d 14 (Ky. App. 2006), precluded the family court from entering any DVO against a party over whom the court lacked personal jurisdiction. On July 26, 2023, the family court heard arguments and entered separate orders on Aldava's CR 12.02(b) motion and the DVO petition. (R. 217-31.)

The family court denied Aldava's motion to dismiss. The court began by applying the three-prong test for determining personal jurisdiction as set out in *Spencer* and said: "Under this test, this court does not have personal jurisdiction over [Aldava]." (R. 224.) Nevertheless, the family court concluded it had "proper jurisdiction to hear the case as illustrated in *Spencer*." (R. 247.)

The family court then entered a DVO, ordering the parties as follows: (1) Aldava shall commit no acts of violence, stalking, or of threatening violence; (2) Aldava shall have no unauthorized contact with Baum or child and cannot be within 500 feet of either; (3) Aldava shall refrain from disposing of or damaging the parties' property; (4) Baum shall have sole custody of their child; and (5)

-5-

Aldava is "ordered not to possess, purchase, obtain or attempt to possess, purchase or obtain a firearm" during the three years the DVO would last. (R. 238-39.)

This appeal follows.[4]

## **STANDARD OF REVIEW**

This Court may only reverse the family court's decision to issue a DVO if the family court's decision is clearly erroneous or constitutes an abuse of discretion. *Guenther v. Guenther*, 379 S.W.3d 796, 802 (Ky. App. 2012) ("We bear in mind that in reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial court were clearly erroneous or that it abused its discretion.") (citing *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982); CR 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986)). Conversely, when reviewing a CR 12.02(b) motion to dismiss for lack of personal jurisdiction, we afford the family court no discretion as this is a question of law this Court reviews *de novo*. *Doe 1 v. Flores*, 661 S.W.3d 1, 4 (Ky. App. 2022).

---

[4] The Kentucky Supreme Court rendered an opinion on March 14, 2024, regarding the parties' related custody action. *Aldava v. Johnson*, __ S.W.3d __, 2024 WL 1114869 (Ky. Mar 14, 2024).

## ANALYSIS

Aldava contends the family court lacked personal jurisdiction over him and reads *Spencer*, *supra*, as precluding any court from entering a DVO against a party over whom the court exercises no personal jurisdiction.

Baum argues Aldava waived personal jurisdiction. We begin with Baum's waiver argument and conclude Aldava did not waive his objection to the family court's exercise of personal jurisdiction.

Our starting point is this: "No personal judgment shall be rendered against a defendant constructively summoned, and who has not appeared in the action, except as provided in KRS[5] 454.210." KRS 454.165. Of course, KRS 454.210 is generally referred to as our "long-arm statute." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 54 (Ky. 2011). We need not quote the statute here because even the family court held it could not exercise personal jurisdiction over Aldava. (R. 224.) This part of our analysis focuses on Baum's argument that Aldava procedurally waived his right to contest personal jurisdiction.

"A defense of lack of jurisdiction over the person . . . is waived (a) if omitted from a motion in the circumstances described in Rule 12.07, or (b) if it is neither made by motion under Rule 12 nor included in a responsive pleading or an

---

[5] Kentucky Revised Statutes.

amendment thereof permitted by Rule 15.01 to be made as a matter of course." CR 12.08(1). The "circumstances described in Rule 12.07" do not apply to these facts.[6] That leaves CR 12.08(1)(b). We can ignore the final part of CR 12.08(1)(b) addressed to amended responsive pleadings because that circumstance is not present either.

It boils down to this: Aldava waived the defense if he failed to raise it "by motion under Rule 12" or if the defense was "no[t] included in a responsive pleading . . . ." CR 12.08(1)(b). We will now look to the record to see whether either of these occurred.

The record shows Aldava filed his Rule 12 motion on January 31, 2023. (R. 94.) Thus, he did not waive the defense by failing to file a motion. That leaves this final question: Did Aldava file a responsive pleading that did not include the defense of lack of personal jurisdiction before he filed his Rule 12 motion? If so, he waived the defense. If not, his defense of lack of personal

---

[6] That rule says:

> A party who makes a motion under Rule 12 may join with it the other motions herein provided for and then available to him. If a party makes a motion under Rule 12 but omits therefrom any defense or objection then available to him which Rule 12 permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in paragraph (2) of Rule 12.08 on any of the grounds there stated.

CR 12.07. The only Rule 12 motion Aldava made was to dismiss for lack of personal jurisdiction.

jurisdiction remains viable.  We conclude he did not file a responsive pleading before he filed his Rule 12 motion.

The only filing in the record attributable to Aldava prior to his Rule 12 motion is his CR 60.02 motion.  A CR 60.02 motion cannot be a responsive pleading because it is not a pleading of any kind.  CR 7.01.  The exclusive list of pleadings appears in CR 7.01 and that list includes only a complaint, answer, counterclaim, reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and any answer thereto.  *Bingham Greenebaum Doll, LLP v. Lawrence*, 567 S.W.3d 127, 131 (Ky. 2018) (pleadings are limited to those listed in CR 7.01).

However, Baum implies in her brief that Aldava's CR 60.02 motion was the equivalent of a Rule 12 motion and that Aldava's counsel's statements at the December 7, 2022 established as much.  Baum asserts that Aldava's counsel orally moved the court to dismiss this action pursuant to CR 12.02(e) (insufficiency of service of process) and, by failing to also cite CR 12.02(b) (lack of jurisdiction over the person), he waived the defense.  However, there is nothing in the record to support these assertions.

The record contains the court docket from December 7, 2022, and the court's notes on that docket read:  "Parties agree to pass to circuit docket.  Hearing set for 2/6/23 @ 10:00 am."  (R. at 93.)  Nothing on the docket indicates any

motions were argued. Neither of the two CDs the parties included in the record contains a recording of the December 7, 2022 hearing.

As indicated in footnote 2, *supra*, we cannot apply the law to mere assertions of fact not supported by the certified record. Before this Court applies the law to an advocate's assertion that a fact exists, the advocate must specifically cite to evidence of that fact in the record as required by our Rules of Appellate Procedure. RAP[7] 32(A)(3), (A)(4). Absent the opposing party's stipulation to a fact or express factfinding in the judgment being appealed, this Court is justified in treating uncited assertions as unfounded. One reason RAP 32 requires such citation is to protect the advocate and his client from a reputation with the Court for making unfounded assertions.

Because the family court addressed Aldava's motion for lack of personal jurisdiction and treated the issue as not being waived, we presume evidence of the December 7, 2022 hearing contradicts Baum's unfounded assertion that Aldava waived personal jurisdiction. *See Rockcastle Cnty. v. Bowman*, 120 S.W.2d 385, 388 (Ky. 1938) (absent record evidence to the contrary, "it will be presumed that the evidence heard sustained" the judgment or order).

The issue of waiver being resolved, we begin addressing the issue of personal jurisdiction itself by noting a point of the parties' agreement – the

---

[7] Kentucky Rules of Appellate Procedure.

Jefferson Family Court lacked personal jurisdiction of Aldava. But *Spencer v. Spencer* shows that does not end the analysis.

In *Spencer*, our Court was tasked with deciding whether under KRS 403.725(1) "a Kentucky court may issue a protective order against an individual over whom the court does not have personal jurisdiction." *Spencer*, 191 S.W.3d at 16. As in the instant case, Kentucky courts did not have personal jurisdiction over the respondent because the alleged abuse took place outside Kentucky between non-Kentucky residents. However, the Court noted that "the language of KRS 403.725 clearly envisions a court granting a protective order when a victim of domestic abuse has fled to this state." *Id.* at 17.

The Court explained "[w]e must balance the due process rights of the defendant against the interest of the Commonwealth in protecting the victims of domestic violence." *Id.* Because it was an issue of first impression in Kentucky, the Court looked to other jurisdictions before deciding to adopt the reasoning of a New Jersey opinion, *Shah v. Shah*, 875 A.2d 931 (N.J. 2005). *Id.* at 17-19 (footnote omitted). The *Spencer* Court said:

> In its opinion [in *Shah*], the [New Jersey] court drew a distinction between a prohibitory order that serves to protect the victim of domestic violence, and an affirmative order that requires that a defendant undertake an action.
>
> The former, which allows the entry of an order prohibiting acts of domestic violence against a defendant over whom no personal jurisdiction

exists, is addressed not to the defendant but to the victim; it provides the victim the very protection the law specifically allows, and it prohibits the defendant from engaging in behavior already specifically outlawed. Because the issuance of a prohibitory order does not implicate any of defendant's substantive rights, the trial court had jurisdiction to enter a temporary restraining order to the extent it prohibited certain actions by defendant in New Jersey. [*Shah*, 875 A.2d at 939.]

An affirmative order, on the other hand, involves the court attempting to exercise its coercive power to compel action by a defendant over whom the court lacks personal jurisdiction. [*Id.*]

The court held that minimum contacts considerations forbid the entry of a final restraining order because by statutory definition it had to include affirmative relief, such as the surrender of firearms and firearm permits, the payment of a civil penalty, and surcharge, and collateral consequences such as enrollment in a central offenders registry.

In our view, the distinction made by New Jersey's highest court between prohibitory and affirmative orders represents the fairest balance between protecting the due process rights of the nonresident defendant and the state's clearly-articulated interest in protecting the plaintiff and her child against domestic violence.

*Spencer*, 191 S.W.3d at 18-19 (footnotes omitted).

Although the language of KRS 403.725 was amended after *Spencer*, it still provides in KRS 403.725(2) that "[t]he petition may be filed in . . . a county where the victim has fled to escape domestic violence and abuse." We are required by law to interpret this language broadly because the purpose of our domestic

-12-

violence statutes is to provide victims with "short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible" while also providing law enforcement officers with the means to protect victims. KRS 403.715(1), (2), and (3).

Just as the EPO in *Spencer* included both prohibitory orders and affirmative orders, the family court's EPO and DVO in the instant case included both. We follow *Spencer* in holding that to the extent the order prohibits Aldava from breaking the law by approaching Baum, it comports with due process. *Spencer*, 191 S.W.3d at 19.

On the other hand, *Spencer* indicates that Aldava's due process rights are violated to the extent the EPO or DVO orders "affirmative relief, such as the surrender of firearms and firearm permits, the payment of a civil penalty, and surcharge, and collateral consequences such as enrollment in a central offenders registry." *Id.* The DVO in this case offends Aldava's due process rights to the extent it orders any of these or any other affirmative relief.

As for the issue of the parties' custody of their child, *Spencer* gives us only a little help. In *Spencer*, as part of the domestic violence order, the mother was awarded temporary custody of the child. After repeating that "[i]nsofar as the order prohibits [respondent Ken Spencer] from breaking the law in Kentucky by approaching Ava or [their child], it comports with due process[,]" the Court

identified everything else as unconstitutional affirmative relief. *Id.* "*In all other respects*," said the Court, "it goes beyond the permissible limits of Kentucky courts' jurisdiction. *Id.* We recognize that the passage of time since the entry of the order may well mean that the circuit court now has jurisdiction to make custody and status determinations if Ava has continued to reside in Kentucky." *Id.* (emphasis added).

By awarding custody of the parties' minor child to Baum without personal jurisdiction over Aldava, the family court went beyond "prohibit[ing] the defendant from engaging in behavior already specifically outlawed." *Id.* at 18. Aldava's right to parent is protected by the U.S. Constitution as a fundamental right. "[U]nder the Fourteenth Amendment of the United States Constitution, a parent, who is not unfit, has the fundamental right to make decisions as to the care, custody, and control of his or her child." *Hoskins v. Elliott*, 591 S.W.3d 858, 861 (Ky. App. 2019) (citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000)). Unless another court, in the proper exercise of jurisdiction, determined custodial rights differently, Kentucky courts are bound by our law that says: "The father and mother shall have the joint custody, nurture, and education of their children who are under the age of eighteen (18)." KRS 405.020(1).

No court has the authority to deprive any person of the constitutional right to parent their children, or such person's Second Amendment right to bear arms, without first obtaining personal jurisdiction of that person. Accordingly, this Court now follows the lead of *Spencer* and decides this nearly identical case with a nearly identical conclusion and decree.

## **CONCLUSION**

The order from which this appeal is taken is vacated, and the case is remanded to Jefferson Circuit Court for further proceedings in accordance with this Opinion.

ALL CONCUR.


BRIEF FOR APPELLANT:

Miles Devon Skeens IV
Louisville, Kentucky

BRIEF FOR APPELLEE:

Samantha Jo Hall
Louisville, Kentucky