ARIANA CAPLAN *vs.* DAVID R.J. DONOVAN.

Middlesex. November 8, 2007. - January 17, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Abuse Prevention. Due Process of Law,* Abuse prevention, Jurisdiction over nonresident. *Jurisdiction,* Long-arm statute, Nonresident, Personal. *District Court,* Jurisdiction.

The District Court had jurisdiction to issue an abuse prevention order under G. L. c. 209A in favor of a plaintiff who alleged that she had fled to Massachusetts to escape the abuse of the defendant, the plaintiff's domestic partner, who had remained in their home in Florida, where, although the long-arm statute, G. L. c. 223A, § 3, did not authorize assertion of personal jurisdiction over the defendant in the absence of a tortious injury in the Commonwealth within the meaning of § 3 (*d*) [465-467] and in the absence of a claim falling within the scope of § 3 (*g*) [467-468], the District Court could nevertheless, consistent with principles of due process, declare the protected status of a person currently domiciled within Massachusetts, although it had no authority to impose any personal obligations on the defendant [468-472].

COMPLAINT for protection from abuse filed in the Natick Division of the District Court Department on June 9, 2006.

A motion to dismiss was heard by *Sarah B. Singer*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Thomas T. Worboys* for the defendant.

*Pauline Quirion (Megan H. Christopher* with her) for the plaintiff.

*Claire Laporte & Rebekah R. Clark*, for Jane Doe Inc. & another, amici curiae, submitted a brief.

BOTSFORD, J. We consider in this case whether a Massachusetts court has jurisdiction to issue an abuse prevention order under G. L. c. 209A in favor of a plaintiff who alleges that she has fled to this Commonwealth to escape the abuse of her domestic partner who remains in their home in Florida. We conclude that a court may issue such an order of prevention and pro-

tection even without personal jurisdiction over the defendant, but may not impose affirmative obligations on the defendant if there is no personal jurisdiction.

1. *Background.*[1] The plaintiff, Ariana Caplan, and the defendant, David Donovan, met in Massachusetts in 2000 and lived together in this Commonwealth before moving to Florida in 2002. In 2004 the parties had a child. The plaintiff took the child with her on occasional vacations to Massachusetts, but the defendant never returned to the Commonwealth. The plaintiff alleges that, beginning in 2004, the defendant was periodically physically abusive to her. After an incident on May 14, 2006, the plaintiff fled with their son from their home in Ocklawaha, Florida. According to the plaintiff, the defendant accused her of cheating, called her a whore, and threatened to kill her and to keep their son. He blocked the door when she tried to leave the room, and when she grabbed the telephone to contact the police, he ripped the telephone from her hand and threw her across the room. He again blocked the door when she attempted to leave, this time slamming his fist against the wall, punching a hole in the wall.

The plaintiff and the child arrived at her mother's house in Massachusetts on June 5, 2006, twenty days after the May 14 incident. At some time before June 7, 2006, when the plaintiff first came to court, the defendant had telephoned the plaintiff's father's house in Massachusetts, had telephoned his own friends in Massachusetts apparently trying to locate the plaintiff, and also had called the plaintiff's cellular telephone five or six times each day.[2] On June 7, the plaintiff filed a complaint in the Natick Division of the District Court Department, seeking an abuse prevention order under G. L. c. 209A. Following an ex parte hearing, a judge in that court issued an order. The order directed the defendant not to abuse the plaintiff, not to contact the plaintiff, and not to come within fifty yards of the plaintiff's residence in Natick. It also awarded custody of the parties'

---

[1]We recite the facts as they appear in the record, which consists of the plaintiff's complaint; the protective order; the transcripts of the hearings in the District Court on June 9 and June 19, 2006; the defendant's affidavit; and the Florida sheriff's return of service.

[2]The record does not indicate precisely when the defendant made any of these calls, and reveals nothing about their content.

child to the plaintiff and ordered the defendant not to contact the child. The defendant was also ordered to surrender his firearms to the local police department in Ocklawaha, Florida. Finally, the order directed the defendant to compensate the plaintiff in an amount to be determined at a later hearing.[3] By its terms, the order was set to expire on June 19, 2006, and it set June 19 as the next hearing date.

At the hearing held on June 19, 2006, the plaintiff was present, and counsel appeared on behalf of the defendant. The defendant moved to dismiss the complaint under Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754 (1974), for lack of personal jurisdiction and to vacate the abuse prevention order. The court denied the motion and extended the order for one year. The defendant appealed. We granted the plaintiff's application for direct appellate review. We conclude that the District Court lacked personal jurisdiction over the defendant, but that personal jurisdiction was not required for the court to issue an abuse prevention order. Accordingly, we affirm in part and reverse in part.

2. *Discussion.* a. *Personal jurisdiction.* "Generally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). The plaintiff argues that the court had personal jurisdiction over the defendant, and she points to the Massachusetts long-arm statute, G. L. c. 223A, § 3 (*d*) and (*g*), as providing the statutory authorization.

Section 3 (*d*) does not apply in this case.[4] That provision allows the exercise of personal jurisdiction over a person who

---

[3]The judge, however, did not set an amount that the defendant was to pay at the later hearing held June 19, 2006, or at any other time.

[4]General Laws c. 223A, § 3, provides: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (*d*) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed

causes "tortious injury in this [C]ommonwealth by an act or omission outside this [C]ommonwealth if he . . . engages in any . . . persistent course of conduct . . . in this [C]ommonwealth." G. L. c. 223A, § 3 (d). The plaintiff argues that tortious injury in this Commonwealth was caused by the defendant's telephone calls to the plaintiff's father and the defendant's friends in Massachusetts, and also to the plaintiff's cellular telephone.

The calls did not amount to a tortious injury in the Commonwealth sufficient to allow personal jurisdiction. The mere fact of making telephone calls, even five or six calls per day, does not by itself create a tortious injury in the Commonwealth. While telephone calls made from outside a State could create a tortious injury within it when the calls include threats or harassing statements, see, e.g., *Beckers* v. *Seck*, 14 S.W.3d 139, 141, 143 (Mo. Ct. App. 2000); *McNair* v. *McNair*, 151 N.H. 343, 349 (2004), the record is silent on the content of the calls at issue in this case. Even in the context of allegations of abuse, there is no basis to assume that the calls were threatening or abusive, and no evidence that the calls themselves placed the plaintiff in fear. Cf. *A.R.* v. *M.R.*, 351 N.J. Super. 512, 517, 520 (2002) (finding personal jurisdiction for plaintiff's restraining order against defendant when order was sought "as a result of the fear engendered by one or more of defendant's telephone calls" placed from outside State).

The plaintiff did not state expressly in her complaint or in testifying before the judge that she continued to experience emotional distress or fear stemming from the abusive incident in Florida. Even if one might reasonably infer that she did, this would not provide the "tortious injury in this [C]ommonwealth" required by § 3 (d). Although the continuing "manifestations, effects, and consequences of an out-of-State injury may be experienced in Massachusetts, they do not constitute 'injury in this commonwealth' within the meaning of § 3 (d)." *Cunningham* v. *Ardrox, Inc.*, 40 Mass. App. Ct. 279, 282 (1996). Compare *Crocker* v. *Hilton Int'l Barb., Ltd.*, 976 F.2d 797, 799-800 (1st Cir. 1992) (no personal jurisdiction over defendant because tortious injury to which § 3 [d] refers and on which plaintiffs'

---

or services rendered, in this commonwealth."

claims were based was sexual assault that occurred at defendant's Barbados hotel; posttrauma injuries experienced on return to Massachusetts were "manifestations or effects of that injury"), with *Darcy* v. *Hankle*, 54 Mass. App. Ct. 846, 850-852 (2002) (emotional and economic injuries suffered by plaintiff when contacted in Massachusetts by police as result of out-of-State defendant's wrongfully initiated New York criminal proceeding against him constituted "tortious injury [occurring] in this [C]ommonwealth," supporting personal jurisdiction over defendant under § 3 [*d*]).[5] Any continued fears or emotional distress that the plaintiff experienced in Massachusetts would qualify as "[m]anifestations, effects, and consequences" of the injury she suffered in Florida and then transported to Massachusetts, not injuries created in the Commonwealth. See *Cunningham* v. *Ardrox, Inc., supra.*

Nor does § 3 (*g*) supply a basis for personal jurisdiction. Section 3 (*g*) allows the exercise of personal jurisdiction over a person who maintains "a domicile in this [C]ommonwealth while a party to a personal or marital relationship out of which arises a claim for divorce, alimony, property settlement, parentage of a child, child support or child custody; or the commission of any act giving rise to such a claim." G. L. c. 223A, § 3 (*g*). The plaintiff's claim for a protective order is not one of the types of claims listed in § 3 (*g*). Nor does the presence of a claim for custody confer personal jurisdiction over the defendant with respect to a protective order merely because the two claims are presented in the same document.[6] The plaintiff does not point to any other provisions in the long-arm statute that might apply in

---

[5]In *Hughs* v. *Cole*, 572 N.W.2d 747 (Minn. Ct. App. 1997), the Court of Appeals of Minnesota held that in an action brought on behalf of a child for an abuse prevention order, a Minnesota court could assert personal jurisdiction over the father in Pennsylvania based on the presence of the child in Minnesota and the fact that the child suffered emotional injuries in Minnesota stemming from abuse that had occurred in Pennsylvania. As far as we can ascertain, no other jurisdiction has concluded that personal jurisdiction may be premised solely on the emotional sequelae suffered by a plaintiff in the forum State on account of a wrong committed in another State. We choose not to follow the court's reasoning in the *Hughs* case.

[6]The plaintiff also argues that jurisdiction can be found in G. L. c. 209D, § 2-201 (5) (Massachusetts Uniform Interstate Family Support Act), which provides personal jurisdiction over a nonresident individual "[i]n a proceeding to establish, enforce, or modify a support order" if a child "resides in the

this case, and none appears to fit the circumstances presented. There is, therefore, no reason to consider whether the exercise of personal jurisdiction over the defendant would fall within the minimum contacts standard required by the due process clause of the United States Constitution.

b. *Status determination.* Our conclusion that the District Court lacked personal jurisdiction over the defendant does not end the inquiry. It is established that a court may adjudicate matters involving the status of the relationship between multiple parties even where personal jurisdiction over all of the parties is not established. See *Pennoyer* v. *Neff,* 95 U.S. 714, 722, 734-735 (1877) (recognizing that State has authority to determine civil status of its citizen with respect to that citizen's relationship to nonresident). This authority stems from a State's ".rightful and legitimate concern" in the status of "persons domiciled within its borders," a concern that is no less legitimate because that status might also affect a person outside of the State. *Williams* v. *North Carolina,* 317 U.S. 287, 298-299 (1942). For example, a State court may grant a divorce to a spouse domiciled within that State without violating the due process rights of an absent spouse over whom it does not have jurisdiction. See *id.*; Restatement (Second) of Conflict of Laws § 71 (1971) ("[S]tate has power to exercise judicial jurisdiction to dissolve the marriage of spouses one of whom is domiciled in the state"). This court, too, has recognized that due process is not violated when a court adjudicates certain matters relating to the marriage or divorce of an in-State spouse, including "the incidents of the status of marriage" and the "care, custody and maintenance of minor children," even though the court lacks personal jurisdiction over the out-of-State spouse. *Wiley* v. *Wiley,* 328 Mass. 348, 349 (1952).

The authority of a court in such matters is not limited to declarations relating to marriage. Under G. L. c. 209B, § 2 (*a*) (3)

[C]ommonwealth as a result of the acts or directives of the individual." We need not decide whether this provision would have provided jurisdiction for a support order in this case because the court did not issue such an order. General Laws c. 209D, § 2-201, does not provide jurisdiction for abuse prevention orders, and as in the case of custody, the presence of a request for support does not confer personal jurisdiction over the defendant with respect to a protective order merely because the two claims are presented in the same document.

(Massachusetts Child Custody Jurisdiction Act), "a Massachusetts court can award temporary emergency custody of a child to a parent fleeing to Massachusetts from an allegedly abusive situation in another State, thereby acting without personal jurisdiction over the out-of-State parent." *Lamarche* v. *Lussier*, 65 Mass. App. Ct. 887, 894 n.13 (2006). See *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 358-359 (1989). Such custody orders comport with due process although the absent parent has no contact with the forum State, provided that the orders are limited to a determination of the child's custodial status within the State. This status exception to the personal jurisdiction ordinarily required by due process reflects the importance of a State's interest in the protection of offspring within its borders. *Bartsch* v. *Bartsch*, 636 N.W.2d 3, 7 (Iowa 2001), quoting *Williams* v. *North Carolina*, 317 U.S. at 298-299.

A court order that prohibits the defendant from abusing the plaintiff and orders him to have no contact with and to stay away from her — provisions that appear in the abuse prevention order issued in this case — serves a role analogous to custody or marital determinations, except that the order focuses on the plaintiff's protected status rather than her marital or parental status. Such an order furthers the Commonwealth's important public policy goal of securing "the fundamental human right to be protected from the devastating impact of family violence," *Champagne* v. *Champagne*, 429 Mass. 324, 327 (1999); *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. 769, 772-773 (2005), by declaring the protected status of a person who is currently domiciled in this Commonwealth after coming here to escape from abuse. As the Supreme Court of Iowa observed, "[i]f a court may constitutionally make orders affecting marriage, custody, and parental rights without personal jurisdiction of a defendant, it certainly should be able to do what the court did here — enter an order protecting a resident . . . family from abuse." *Bartsch* v. *Bartsch*, 636 N.W.2d at 10. If this were not so, the unpalatable choices remaining are either to require the victim of abuse to return to the State in which the abuse occurred in order to obtain an effective abuse prevention order or, alternatively, to wait for the abuser to follow the victim to the Commonwealth and, in the event of a new incident of

abuse, seek an order from a Massachusetts court. In neither alternative will a court be able to provide protection to those within its borders. See *Lamarche* v. *Lussier*, 65 Mass. App. Ct. at 894 n.13.

Due process considerations do impose limits on such status determinations. See *Williams* v. *North Carolina*, 317 U.S. at 299. First, any order must provide the defendant with reasonable notice and an opportunity to be heard. See *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940). Second, "[i]t has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." *Kulko* v. *Superior Court*, 436 U.S. 84, 91 (1978).[7] See *Wiley* v. *Wiley*, 328 Mass. at 349, 351 (order determining separate status of wife and custody of children without personal jurisdiction over other spouse cannot order payment of money). Accordingly, a valid abuse prevention order issued without personal jurisdiction cannot impose any personal obligations on a defendant, and is limited to prohibiting actions of the defendant. See *Shah* v. *Shah*, 184 N.J. 125, 139 (2005). The limitation prevents a court from issuing any affirmative order in which it attempts to "exercise its coercive power to compel action by a defendant." *Spencer* v. *Spencer*, 191 S.W.3d 14, 18 (Ky. Ct. App. 2006), citing *Shah* v. *Shah*, *supra* at 138. A prohibitory abuse prevention order admittedly is not the same as a status determination made in custody or divorce cases because, while the orders in such cases principally focus on the plaintiff, an abuse prevention order is primarily addressed to the defendant. But, as this court has recognized for over fifty years, an order that is appropriately limited to prohibitions that relate to the protected status of a

---

[7]*Kulko* v. *Superior Court*, 436 U.S. 84 (1978), involved a husband and wife who had both been domiciled in New York State while married. They separated, and the wife moved to California, where she was later joined by the couple's two minor children. The wife sought and obtained from the California Superior Court an order awarding her custody over the children and an increase in the husband's child support obligations. The husband did not contest the custody order, but challenged the court's personal jurisdiction to enter the child support order. The Court held that in view of the husband's lack of meaningful contacts with California, that State could not exercise personal jurisdiction over the husband, and accordingly the California court lacked authority to order him to pay increased child support. *Id.* at 91, 100-101.

person within the Commonwealth does not violate the due process rights of a nonresident defendant just because it issues without personal jurisdiction over that defendant.[8] See *Wiley* v. *Wiley*, 328 Mass. at 349, 351 (affirming jurisdiction of Massachusetts court, if either party is domiciled in Commonwealth, to enter order determining separate status of wife and prohibiting husband "from imposing any restraint upon the personal liberty" of wife).

The result we reach is one that other jurisdictions have adopted. In *Bartsch* v. *Bartsch*, 636 N.W.2d at 6, 7-10, the Supreme Court of Iowa held that "personal jurisdiction over a nonresident defendant is not required for a court to enter an order preserving the protected status afforded Iowa residents" under that State's domestic abuse statute allowing protective orders. Similarly, in *Shah* v. *Shah*, 184 N.J. at 138, the Supreme Court of New Jersey held that under its domestic violence statute a New Jersey court could enter a protective restraining order against a defendant over whom it had no personal jurisdiction "to the extent it prohibited certain actions by defendant in New Jersey." The *Shah* court held that such an order could not impose any affirmative obligations on the defendant, such as requiring the payment of money or the handing over of documents, without violating the defendant's due process rights. See *id.* at 140-141. See also *Spencer* v. *Spencer*, 191 S.W.3d 14, 19 (Ky. Ct. App. 2006) (status exception allows protective order against nonresident defendant limited to prohibiting contact with plaintiff). But see *T.L.* v. *W.L.*, 820 A.2d 506 (Del. Fam. Ct. 2003) (status exception did not allow protective order against nonresident defendant).

The greater part of the order at issue in this case falls within

---

[8]The constitutional concerns raised by such an order are not limited to due process. Although a State always has a right to enforce its own laws within its borders, *Williams* v. *North Carolina*, 317 U.S. 287, 298-299 (1942), in order to issue a status determination that is given full faith and credit in a foreign jurisdiction a court must have sufficient interest in the parties or the matter adjudicated. See *id.* at 297 ("Domicil of the plaintiff, immaterial to jurisdiction in a personal action, is recognized . . . as essential in order to give the court jurisdiction which will entitle the divorce decree to extraterritorial effect, at least when the defendant has neither been personally served nor entered an appearance"). The defendant does not claim that the plaintiff had not established a domicil in Massachusetts at the time she sought the abuse prevention order from the District Court.

the limits imposed by due process.[9] The defendant does not argue that he was denied reasonable notice or an opportunity to be heard, nor could he, because he was personally served in Florida with a notice of the order and a hearing was held (in Massachusetts) at which his attorney appeared. The order's prohibition against the defendant's abusing, contacting, or approaching the plaintiff or their child contains no affirmative obligation, and therefore it does not require personal jurisdiction. The defendant does not contest the District Court's jurisdiction to grant custody of the child to the plaintiff, but even if he did, jurisdiction can be found in G. L. c. 209B, § 2 (*a*) (3), which allows the exercise of jurisdiction for purposes of determining emergency custody of a child present in the Commonwealth. See *Lamarche* v. *Lussier*, 65 Mass. App. Ct. 887, 894 n.13 (2006), citing *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 359 (1989). However, that portion of the order that requires the defendant to surrender his firearms imposes an affirmative duty. Such an obligation may only be imposed by a court with personal jurisdiction over the defendant, and accordingly, that portion of the order is invalid.

3. *Conclusion.* So much of the abuse prevention order that orders the defendant not to abuse the plaintiff, not to contact the plaintiff, and to stay away from the plaintiff and the plaintiff's residence, that grants custody of the child to the plaintiff, and that orders the defendant not to contact and to stay away from the child is affirmed; so much of the abuse prevention order that orders the defendant to compensate the plaintiff and surrender firearms is vacated.

*So ordered.*

---

[9]The order in this case included an order to compensate the plaintiff in an "am't to be ordered" at a later hearing, but no amount was ever specified. Although the issue is not before us here, such an order to pay compensation would probably extend beyond the permissible scope of a status determination issued without personal jurisdiction. See *Kulko* v. *Superior Court*, 436 U.S. at 91.