RENDERED: APRIL 24, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0182-DGE

ALYSSA BAUM                                                    APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2023-CA-1038
JEFFERSON FAMILY COURT NO. 20-D-503107-001

JUSTIN ALDAVA                                                  APPELLEE

**OPINION OF THE COURT BY JUSTICE THOMPSON**

**AFFIRMING IN PART, REVERSING IN PART AND REMANDING**

This appeal involves the judicial powers of Kentucky's courts to offer protection to parents and children that have fled to this state to escape abuse and to what extent, consistent with due process of law, our courts may enter orders of protection against non-resident respondents over whom they cannot assert personal jurisdiction.

We hold that a Kentucky court, regardless of whether it possesses personal jurisdiction over a non-resident may issue domestic violence orders (DVOs): (a) protecting both a petitioner and the parties' children from domestic violence; (b) awarding temporary child custody; (c) restricting a non-resident respondent's access to firearms within the borders of the Commonwealth; and

(d) such orders may be recorded in the Law Information Network of Kentucky (LINK) pursuant to KRS 403.751(2).

This opinion marks the second time the parties have been before this Court on issues regarding the legal capacity of Kentucky courts to resolve child custody and domestic violence matters when our courts do not have personal jurisdiction over a respondent who resides out of state. Last year, in *Aldava v. Johnson,* 686 S.W.3d 205 (Ky. 2024) (*Aldava I*), we affirmed the denial of a writ of prohibition sought to prevent the Jefferson Family Court from issuing a temporary custody order on the basis that it was proceeding outside its jurisdiction. We ruled that when deciding where the child lived for purposes of establishing home-state jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[1] the physical location of child in Kentucky was the central consideration and Kentucky courts had "temporary emergency jurisdiction" to resolve the temporary custody issue under the UCCJEA. *Id.* at 213. We refer to those proceedings which culminated in *Aldava I* as the "custody action"; the case now before us on appeal involves the "domestic violence action."

## I. FACTUAL AND PROCEDURAL BACKGROUND

H.A. (child) was born in Texas in June 2019, to Justin Aldava and Alyssa Baum. On December 10, 2019, Baum and child left Texas to stay with Baum's

---

[1] Kentucky adopted the UCCJEA through its enactment of Kentucky Revised Statutes (KRS) 403.800 to 403.880. Texas has also codified the UCCJEA as Texas Family Code Chapter 152. The two enactments are largely identical.

2

family in Jefferson County, Kentucky. Baum returned to Texas with child on or around March 28, 2020. The family remained in Texas for two months until May 29, 2020, when they relocated to Yelm, Washington for Aldava's work. Aldava is a wind turbine blade technician, and his job frequently requires him to relocate for indefinite periods of time. After completion of that job, on October 3, 2020, Baum, Aldava, and child returned to Texas.

A few weeks later, shortly after an incident of domestic violence, Aldava's employer assigned him to another remote work project. Baum took that opportunity to flee with child to her parents' residence in Kentucky. Baum and child arrived in Kentucky on November 22, 2020. Baum has maintained residency in Kentucky with child since then.

Eight days after arriving in Kentucky, on November 30, 2020, Baum filed a petition for a protective order against Aldava in the Jefferson Family Court (the domestic violence action). In her initial petition, Baum sought an Emergency Protective Order (EPO) and temporary custody of their minor child. In her affidavit in support of such petition, she recounted the domestic violence which occurred on October 12, 2020. Baum also stated Aldava had several pending and/or past criminal charges, including misdemeanor domestic violence charges, felony aggravated robbery, and he had an association with organized crime through the Bandidos motorcycle club.

Baum testified that on October 12, 2020, she and child were riding as passengers in a vehicle driven by Aldava. They were going to pick up Aldava's motorcycle from where it was being repaired. Aldava began verbally abusing

3

Baum and driving erratically including swerving into oncoming lanes. Once Aldava retrieved his motorcycle, Baum drove away in the vehicle. She went to the house of a friend who was willing to watch child for a few hours and then proceeded to the location of a fifth-wheel camper owned by Aldava and Baum. Aldava met her at the camper, became verbally abusive and, "elbowed [Baum] in her eye and grabbed her so hard that it left bruises in the shape of [Aldava's] fingers." Baum provided photos to the family court, taken several days after the incident demonstrating those injuries.

The family court granted Baum's EPO petition in the domestic violence action on the same day it was filed, entering an *ex parte* EPO against Aldava. The order was amended on December 10, 2020, specifically to grant temporary custody of child to Baum. Multiple summonses were issued but all attempts at service failed. Aldava was not served with the order until April 7, 2021.

On December 14, 2020, Aldava filed a custody petition in Texas asserting "[n]o court has continuing jurisdiction of this suit or of the child the subject of this suit." Aldava's petition failed to refer to the already entered EPO in Kentucky or to request the Texas court analyze jurisdiction under the UCCJEA.

On March 2, 2021, Baum filed for custody of child in the Jefferson Family Court (the custody action). Both the custody action and the previously instituted domestic violence action were heard by the same family court. The next day, on March 3, 2021, Baum requested that the family court conduct a UCCJEA conference with the Texas court. For unknown reasons, that conference did not occur promptly.

4

The family court held a domestic violence hearing on April 7, 2021, without Aldava present. At the conclusion of the hearing, the family court issued a DVO: (1) prohibiting Aldava from contacting Baum or the minor child and from being closer to them than 500 feet; (2) prohibiting Aldava from possessing firearms; and (3) granting temporary sole custody of the child to Baum.

Aldava retained Kentucky counsel who filed a motion in September to vacate the DVO pursuant to Kentucky Rules of Civil Procedure (CR) 60.02. In January of 2023, Aldava, having retained new counsel, filed a Motion to Dismiss specifically arguing that the family court did not have personal jurisdiction over Aldava. The family court did not set aside the DVO it had previously entered, but scheduled a new hearing which would ultimately be held on July 26, 2023.

On September 23, 2022, in the custody action, the parties appeared before the family court to discuss jurisdiction under the UCCJEA. The family court's November 23, 2022, order referenced the UCCJEA telephone conference between the family court and the Texas court and summarized that "[n]either Court felt comfortable asserting superior jurisdiction and agreed that further proceedings were necessary." This order determined Texas was not the home state of child by virtue of the family's time in Washington, and because of the EPO, Kentucky had emergency jurisdiction of child and Texas had no basis to interfere. Records from the Texas court confirmed the conversation referenced

5

in the order and indicated the family court would "email decision on KY keeping jurisdiction."

Aldava filed a direct appeal of the family court's determination of jurisdiction in the custody action on December 21, 2022, which was later dismissed as interlocutory by an order entered by the Court of Appeals on March 1, 2023. Aldava also filed an original action seeking a writ of prohibition on January 25, 2023. The Court of Appeals denied the writ and Aldava appealed as a matter of right to this Court.

While the custody appeal was pending, progress continued on the domestic violence action. On July 26, 2023, the family court held a hearing on both Aldava's motion to dismiss for lack of personal jurisdiction and Baum's motion to enter a DVO. Both parties were present, represented by counsel, and offered testimony. Following the hearing, on August 10, 2023, the family court entered two orders. The first denied Aldava's previously filed motion to dismiss and, in so doing, relied on the Court of Appeals' opinion in *Spencer v. Spencer*, 191 S.W.3d 14 (Ky. App. 2016), which ruled that KRS 403.725 did not have a residency requirement for petitioners who were victims of abuse that had fled to Kentucky from other states.

The second order granted Baum's petition for a DVO on behalf of both herself and child. The family court found Baum's testimony credible regarding a history of chokings, assaults, threats of violence and suicide, and living in a state of prolonged fear of Aldava. The family court noted that child was in the car when Aldava drove recklessly in a state of rage and child was also present

6

and crying during a prior incident when Aldava had "proceeded to slam [Baum] on the wall and choke her . . . so hard she saw white spots." The family court order also recorded Baum's testimony that Aldava had told "a fellow gang member that he would choke her instead of hitting her because it would not leave marks on her."[2]

As to Aldava, the family court found his testimony to have been "not entirely truthful." In particular, Aldava claimed the motorcycle club to which he belonged, the Bandidos, was not a criminal organization, but later "acknowledged that he had a felony conviction related to his association with the Bandido motorcycle club." As another example, the family court recounted Aldava denied threatening suicide in order to coerce Baum, but text messages produced by Baum "showed this too to be false."

The family court's order restrained Aldava from further acts of domestic violence, "restrained [him] from any unauthorized contact" with Baum and child, restricted Aldava from being within 500 feet of Baum and child, ordered Aldava not to possess, purchase, or obtain a firearm, and granted temporary sole custody of child (then four years old) to Baum.

---

[2] Choking presents a very serious risk that a victim will later be killed by the victim's domestic partner. "[I]f a person is strangled even one time, the victim's chance of being killed by their abuser is increased by 750%." Office of the Kentucky Attorney General, *Responding to Strangulation in Kentucky: Guidelines for Prosecutors, Law Enforcement, Health Care Providers, and Victim Advocates* 5 (2025), https://www.ag.ky.gov/Press%20Release%20Attachments/Responding%20to%20Strangulation%20in%20Kentucky%201.15.25.pdf.

On September 7, 2023, Aldava appealed the family court's entry of the DVO to the Court of Appeals arguing that, as a non-resident of Kentucky, the family court lacked personal jurisdiction over him.

On March 14, 2024, our Court rendered its custody opinion and determined that while neither Kentucky nor Texas possessed "initial" home-state jurisdiction of the child under the UCCJEA, "[i]n the absence of a state able to assert home-state jurisdiction over [child], there remains only one possibility: Kentucky properly has temporary emergency jurisdiction under KRS 403.828 by virtue of the EPO." *Aldava I*, 686 S.W.3d at 213.

Just ten days later, on March 29, 2024, in the domestic violence action, the Court of Appeals rendered its opinion in *Aldava v. Baum*, 2023-CA-1038-ME, 2024 WL 1335252 (Ky. App. Mar. 29, 2024) (unpublished) (*Aldava II*). As a preliminary matter, the Court of Appeals determined that the family court did not have personal jurisdiction over Aldava and Aldava had not waived his defense of lack of personal jurisdiction. However, the Court of Appeals agreed the DVO was allowable "to the extent the order prohibits Aldava from breaking the law by approaching Baum," but otherwise determined the DVO violated "Aldava's due process rights to the extent it ordered any . . . other affirmative relief." *Id.* at 6. The Court of Appeals explicitly determined that such impermissible "affirmative relief" included the DVO's award of temporary custody of the parties' minor child to Baum and the DVO's restrictions on Aldava's "Second Amendment right to bear arms." *Id.*

8

Further, while the Court of Appeals did not explicitly agree with Aldava's argument that the DVO violated his due process rights because every DVO must be entered in LINK pursuant to KRS 403.751(2), its opinion cited language found in *Spencer,* 191 S.W.3d at 19, regarding "collateral consequences such as enrollment in a central offender registry[,]" leaving resolution of that issue unclear.

## II. ANALYSIS

Because questions of whether, and to what extent, Kentucky may exercise jurisdiction over non-residents within domestic violence actions encompasses both issues of personal jurisdiction and due process which are issues of law, our review is *de novo. Appalachian Regional Healthcare, Inc. v. Coleman,* 239 S.W.3d 49, 53–54 (Ky. 2007) ("The question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is *de novo.*").

### A.    DID ALDAVA WAIVE PERSONAL JURISDICTION?

Baum consistently argued that Aldava waived his personal jurisdiction argument in the underlying domestic violence action. The Court of Appeals determined that Aldava's initial motion to vacate made pursuant to CR 60.02 did not serve as a waiver of personal jurisdiction because the motion was not "a responsive pleading" since such a motion is not specifically identified as "a pleading" under CR 7.01 which only specifies complaints, answers, counterclaims, replies to a counterclaim, answers to a cross-claim, third-party

9

complaints, and any answers thereto as "pleadings." *Aldava II*, 2024 WL 1335252 at *4.

We disagree. Aldava's counsel's appearance before the family court and his initial filing, which raised no issue of personal jurisdiction, constituted a waiver and conferred personal jurisdiction over him to the family court.

Aldava's first counsel filed a motion to vacate pursuant to CR 60.02 on September 29, 2022. This motion did not claim a lack of personal jurisdiction over Aldava, only referencing the separate custody action "where jurisdiction is a highly contested issue between the parties." The "jurisdiction issue" discussed therein involved the jurisdiction of Texas courts versus Kentucky courts regarding the custody of child, not personal jurisdiction over Aldava. A hearing was scheduled for December 7, 2022, but was later passed until February 6, 2023. Prior to that hearing, on January 31, 2023, a new attorney appeared for Aldava and filed a distinct motion to dismiss for lack of personal jurisdiction. Baum's counsel filed a response to the motion to dismiss specifically arguing that Aldava had waived any defense of a lack of personal jurisdiction pursuant to CR 12. The family court did not deny Aldava's motion to dismiss until after it conducted the DVO hearing but in so doing did not address the issue of waiver, determining instead that it had authority to enter a DVO against Aldava under *Spencer*.

CR 12.02 states, "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim shall be asserted in the responsive pleading thereto if one is required, except

10

that the following defenses may at the option of the pleader be made by motion: . . . (b) lack of jurisdiction over the person."

In turn, CR 12.08 states, "(1) A defense of *lack of jurisdiction over the person,* improper venue, insufficiency of process, or insufficiency of service of process *is waived (a) if omitted from a motion in the circumstances described in Rule 12.07*[3], or (b) if it is neither made by motion under Rule 12 nor included in a responsive pleading or an amendment thereof permitted by Rule 15.01 to be made as a matter of course." (Emphasis added).

CR 12.08 requires litigants "to exercise great diligence in challenging personal jurisdiction[.]" David V. Kramer, 6 Ky. Prac. R. Civ. Proc. Ann Rule 12.08 cmt. 2. A respondent must raise the issue of personal jurisdiction "in the first defensive move, either by motion or responsive pleading[,]" otherwise the issue is waived. *Id.* at cmt. 1.

Moreover, federal courts have recognized "[a] motion to vacate under Rule 60(b) for lack of jurisdiction is essentially equivalent to a Rule 12(b)(2) motion to dismiss for lack of jurisdiction." *Swaim v. Moltan Co.,* 73 F.3d 711, 718 (7th Cir. 1996). This functional equivalence applies with equal force to CR 60.02

---

[3] CR 12.07 reads:

A party who makes a motion under Rule 12 may join with it the other motions herein provided for and then available to him. *If a party makes a motion under Rule 12 but omits therefrom any defense or objection then available to him which Rule 12 permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted,* except a motion as provided in paragraph (2) of Rule 12.08 [not applicable here] on any of the grounds there stated.

(Emphasis added).

11

and CR 12.2, which are modeled on the federal rules. *Bruenger v. Miller*, 706 S.W.2d 247, 261 n.13 (Ky. 2024); Kramer, 6 Ky. Prac. R. Civ. Proc. Ann. Rule 12.02 cmt. 1.

Aldava's initial CR 60.02 motion, filed on September 29, 2022, did not present a claim of a lack of personal jurisdiction. Such did not occur until January 31, 2023, when his new counsel filed his specific motion to dismiss for lack of personal jurisdiction. Aldava's failure to raise the issue of personal jurisdiction at the first opportunity represents a clear waiver.

Best practices for avoiding problems with this issue, would be for counsel to first make a motion, based on a lack of personal jurisdiction, to either dismiss the domestic violence action in its entirety or vacate an entered DVO. Furthermore, counsel should be reminded that when entering one's appearance in such matters and arguing on behalf of such clients, that it is wise to openly and repeatedly note for the record that such appearances are for the "limited" purpose of contesting personal jurisdiction so as to avoid any implication of agreeing to, and waiving any challenge to, the jurisdiction of the court.

Having waived the defense of lack of personal jurisdiction, Aldava should have thereafter been functionally treated by the family court as any citizen resident of Kentucky for purposes of the family court's DVO proceedings and all orders it entered thereafter. For this reason alone, the Court of Appeals should have affirmed the DVO *en toto* as entered by the family court.

12

However, regardless of whether the family court had personal jurisdiction over Aldava, it was not precluded from entering the DVO containing specific provisions applicable to petitioner, child *and* the non-resident respondent, and the Court of Appeals' determinations to the contrary were in error.

## B. STATUTORY CONSIDERATIONS CONCERNING ORDERS OF PROTECTION IN THE COMMONWEALTH

EPOs and DVOs are both governed by KRS Chapter 403. Both types of orders are now referred to as "order[s] of protection." KRS 403.720(7).

If a reviewing court finds that a petition indicates "an immediate and present danger of domestic violence" the court "shall, upon the filing of the petition, issue *ex parte* an emergency protective order[.]" KRS 403.730(2)(a). Such *ex parte* order remains in effect for a short duration, generally "fourteen (14) days," until the respondent has been served and the court can thereafter conduct a hearing. However, if service is not made on the respondent prior to the scheduled hearing, the court can issue a new summons and continue the effectiveness of the initial EPO for up "to six (6) months from the issuance" of the initial EPO. KRS 403.735 (2)(a) and (b).

In contrast to an EPO, a DVO is issued if, following the hearing ordered under KRS 403.730, the court determines from "a preponderance of the evidence that domestic violence and abuse has occurred and may again occur." KRS 403.740(1). For purposes of our domestic violence statutes, the term "domestic violence and abuse" is defined in KRS 403.720(2) as "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of

13

imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]"

In his appeal, Aldava did not contest either the underlying factual foundation for the family court's determinations, or the sufficiency of the evidence presented. Aldava argues the family court erred in its exercise of jurisdiction and violated his due process rights as a non-resident. Based on the record, the evidence presented was indeed sufficient for the family court to conclude that Aldava had previously engaged in acts of domestic violence against Baum, one of which also involved child and another one of which was in the presence of their child, and that his conduct caused Baum to be in imminent fear that Aldava would engage in future acts of domestic violence against her and child if he was not restrained. We will therefore fully accept the factual determinations made by the family court and, as necessary, apply those findings within our analysis.

### 1. Statutory Authority for DVO Provisions Regarding Child Custody

Once the family court has conducted its hearing and determined that domestic violence and abuse has occurred, KRS 403.740 provides a non-exhaustive litany of measures which that a court may order to forestall future violence and acts of abuse. KRS 403.740(1)(e) specifically allows for the court to grant temporary custody of children, subject to KRS 403.315.

In turn, KRS 403.315 removes the presumption that joint custody is in the best interest of a child when domestic violence has been found, stating in relevant part:

14

If a domestic violence order is being or has been entered against a party by another party or on behalf of a child at issue in the custody hearing, the presumption that joint custody and equally shared parenting time is in the best interest of the child shall not apply as to the party against whom the domestic violence order is being or has been entered.

### 2. Statutory Authority for DVOs Entered Against Non-Residents

In *Spencer*, the Court of Appeals concluded that the language of KRS 403.725 clearly allows a court to grant "a protective order when a victim of domestic abuse has fled to this state." *Spencer*, 191 S.W.3d at 17. Since that opinion, the language of KRS 403.725 has been amended but still provides at KRS 403.725(2) that "[t]he petition may be filed in. . . a county where the victim has fled to escape domestic violence and abuse." We will continue to interpret this language broadly to fulfill the purposes of our domestic violence statutes to allow victims to obtain "short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible." KRS 403.715(1).

### C. DVOs AFFECTING NON-RESIDENT RESPONDENTS

The power of state courts to enter any orders or judgments against the interests of non-residents who are not subject to personal jurisdiction of our state, is constitutionally restricted by due process considerations.[4]

---

[4] *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) ("The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant.").

15

However, despite the limitations of our long-arm statute, even if a court lacks personal jurisdiction over a respondent, it will not preclude our courts from protecting victims of domestic violence that flee to Kentucky.

The United States Supreme Court opinion in *Pennoyer v. Neff*[5] established that a court may adjudicate matters involving the "status" of the relationship between multiple parties even where personal jurisdiction over all of the parties is not established. This opinion recognized each state's authority to determine the civil status of its citizens even with respect to that citizen's relationship to a non-resident.

In *Pennoyer*, and despite due process constitutional considerations, the United States Supreme Court distinguished a specific category of cases later referred to colloquially as "status cases" where a state court may adjudicate the personal status of a petitioner like Baum and child in relation to a respondent without considering whether personal jurisdiction over the respondent is constitutionally valid. *Pennoyer* authorizes a state court to conduct proceedings "to determine the *status* of one of its citizens towards a non-resident, which would be binding within the state, though made without service of process or personal notice to the non-resident."[6] We interpret *Pennoyer* to be applicable to matters concerning "the status" of all persons over whom a state court has jurisdiction regardless of whether or not the court has personal jurisdiction over respondents.

---

[5] 95 U.S. 714, 722, 734–735 (1877).

[6] *Id.* at 734.

In *Williams v. North Carolina,*[7] the United States Supreme Court ruled that such state authority stems from a state's "rightful and legitimate concern" in the status of "persons domiciled within its borders," which is a concern no less legitimate because that status might also affect a person outside of the state. As an example, a state court may grant a divorce to a spouse domiciled within that state without violating the due process rights of an absent spouse over whom it does not have jurisdiction.[8] Additionally, custody orders comport with due process although the absent parent has no contact with the forum state, provided that the orders are limited to a determination of the child's custodial status within that state. Explained another way, many family law proceedings do not require long-arm authorization and/or minimum contacts because they are not *in personam* proceedings. Divorces in favor of a state's residents and the custody of children located within a jurisdiction are *in rem* proceedings; such actions are viewed as affecting the *rem* or "the thing at issue" rather than the substantive rights of a respondent or defendant.

This "status exception" to personal jurisdiction ordinarily required by due process reflects the importance of a state's interest in the protection of victims of domestic abuse and their offspring within the state's borders.[9] Courts in other jurisdictions, like our Court of Appeals in *Spencer*, have determined a domestic violence order that is limited to protecting of the

---

[7] 317 U.S. 287, 298-99 (1942).

[8] *See id.;* Restatement (Second) of Conflict of Laws § 71 (1971).

[9] *Bartsch v. Bartsch*, 636 N.W.2d 3, 7 (Iowa 2001), quoting *Williams*, 317 U.S. at 298–99.

petitioner is an "*in rem*" determination to the extent that it is an order requiring a respondent not to commit an unlawful act against the petitioner. Such an order seeks a protected status for the petitioner rather than a determination affecting a respondent's personal rights. These jurisdictions have ruled that a non-resident respondent is not required to have minimum contacts with a state before the court in that state can enter a "prohibitory order" protecting the in-state victim, who has fled an abuser.[10]

The family court and Court of Appeals relied heavily on the *Spencer* opinion, wherein the Court of Appeals had determined that, although a Kentucky court lacked personal jurisdiction over the respondent husband, the court could still issue protective orders to the extent that those orders did not place "affirmative" duties on the respondent over whom the court lacked personal jurisdiction. *Spencer,* 191 S.W.3d at 18. The Court of Appeals' reasoning in that opinion included the determination that KRS 403.725 provides a "safe harbor" provision that "clearly envisions a court granting a protective order when a victim of domestic abuse has fled to this state." *Spencer,* 191 S.W.3d at 17.

We now adopt the reasoning of *Spencer* to the extent that the opinion determined that Kentucky courts may enter orders of protection in favor of petitioners that have fled from domestic violence into the Commonwealth. We

---

[10] *See Hemenway v. Hemenway*, 992 A.2d 575 (N.H. 2010); *Caplan v. Donovan,* 879 N.E.2d 117 (Mass. 2008), *cert. denied,* 553 U.S. 1018; *Shah v. Shah,* 975 A.2d 931 (N.J. 2005); and *Bartsch v. Bartsch,* 636 N.W.2d 3 (Iowa 2001).

18

find that a petitioner's domicile in the Commonwealth creates a relationship to our state which is adequate for this exercise of state power. Each state as a sovereign has a rightful and legitimate concern in the domestic and parental status of persons domiciled within its borders. Our Courts have the power to offer those protections. Kentucky courts "may adjudicate matters involving the status of the relationship between multiple parties even where personal jurisdiction over all of the parties is not established" without violating the due process rights of an absent [domestic partner] over whom it does not have jurisdiction."[11]

An order of protection which "prohibits the defendant from abusing the plaintiff and orders him to have no contact with and to stay away from her . . . serves a role analogous to custody or marital determinations, except that the order focuses on the plaintiff's protected status rather than [the plaintiff's] marital or parental status."[12] Accordingly, an order that prohibits abuse but does not "impose any personal obligations on a defendant" is valid even without personal jurisdiction over the defendant. *Spencer,* 191 S.W.3d at 19.

A protective order "prohibit[s] acts of domestic violence," providing "the victim[s] with the very protection the law specifically allows," while preventing "the defendant from engaging in behavior already specifically outlawed."[13] A contrary ruling would present a domestic violence victim with two "unpalatable

---

[11] *Caplan,* 879 N.E.2d at 122. *See Bartsch,* 636 N.W.2d at 9.

[12] *Caplan,* 879 N.E.2d at 123; *see also Bartsch,* 636 N.W.2d at 10.

[13] *Shah,* 875 A.2d at 939.

choices . . . either to . . . return to the State in which the abuse occurred . . . or, alternatively, to wait for the abuser to follow the victim to [the current state] and, in the event of a new incident of abuse, seek an order from [the current state] court."[14] As for Kentucky, such a result would be at odds with our statutes and the Commonwealth's strong interest in providing protection within this state to the victims of domestic violence and their children.

Accordingly, even had Aldava not waived personal jurisdiction, the family court's protective order was and is appropriate to the extent that the DVO expressly protects the petitioners, Baum and child, from further abuse. The DVO's specific orders restraining Aldava from: committing further acts of domestic violence and abuse pursuant to KRS 403.740(1)(a)(1); any unauthorized contact or communication with the petitioners pursuant to KRS 403.740(1)(a)(2); coming closer than five hundred (500) feet of the petitioners pursuant to KRS 403.740(1)(a)(3); approaching the petitioners' home, school or place of employment pursuant to KRS 403.740(1)(a)(4); and, disposing of or damaging the parties' property pursuant to KRS 403.740(1)(a)(5), are all affirmed.

### 1. Temporary Custody Orders

The Court of Appeals held that, lacking personal jurisdiction over the respondent, the family court was not permitted to award temporary emergency

---

[14] *Caplan,* 879 N.E.2d at 123.

custody to a petitioner within DVO proceedings. *Aldava II*, 2024 WL 1335252 at *6 (citing *Spencer*, 191 S.W.3d at 18). Such holding was in error.

First, KRS 403.828(1), titled "Temporary emergency jurisdiction" states "[a] court of this state has temporary emergency jurisdiction *if the child is present in this state . . .* or *it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.*" (Emphasis added). This language comes directly from the UCCJEA which was adopted by Kentucky, codified in the Commonwealth at KRS 403.800 to 403.880, and governs jurisdiction in determinations involving custody of a child. The UCCJEA is a "uniform act" drafted by the National Conference of Commissioners on Uniform State Laws in 1997 and has been adopted by forty-nine of the states (including Texas where Aldava resides) as well as the District of Columbia, Guam, Puerto Rico, and the U.S. Virgin Islands. The only state that has not adopted the UCCJEA is Massachusetts.

Unlike the residency requirements to establish home-state jurisdiction under the UCCJEA which we discussed at length in *Aldava I,* there is no minimum time period to establish residency found in the statute for entry of a protective order encompassing temporary custody under the UCCJEA. Therefore, when a petitioner and any children are in Kentucky at the time the petitioner files a petition, and they remain here when the family court makes its rulings, the family court clearly has jurisdiction over them.

21

When allegations of domestic violence are substantiated, a court can properly exercise temporary emergency jurisdiction to award "temporary custody" of a child. The family court's exercise of "temporary emergency jurisdiction" in such an instance does not impinge upon any other state's superior jurisdiction under the UCCJEA.

Second, KRS 403.725(1)(b) allows for a petition for an order of protection to be filed by "[a]n adult on behalf of a victim who is a minor otherwise qualifying for relief under this subsection."[15] Where a petition also clearly identifies a child as one of the petitioners, such child may also be protected if they are at risk. Under these circumstances, a family court certainly acts within its authority by recognizing and attempting to protect any child's individual and independent safety interests under our domestic violence statutes.

Third, and particularly relevant to this matter, if a prior appellate court has already recognized Kentucky as the "home state" of the child for custody determinations, such a ruling is controlling. We made such a holding in *Aldava I*:

> KRS 403.828 provides for emergency jurisdiction in the event of an emergency to protect the child or parent of the child. KRS 403.828(1). Although described as temporary, jurisdiction under this section is not subject to a fixed period of expiration, or even to a more subjective reasonable period of time standard. Rather, jurisdiction obtained through KRS 403.828 continues until an order is received from a court of a state having a basis for

---

[15] KRS 403.727 (Effective: July 15, 2024) now sets forth the procedural requirements when "a petition filed under KRS 403.725 on behalf of a minor who is alleged to be a victim of domestic violence and abuse, or in which a minor is named as a respondent or petitioner. . . ."

jurisdiction under another provision of the UCCJEA. KRS 403.828(2). If no other state can assert another basis for jurisdiction, "a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child." *Id.*

In the case of [child], no other state could assert jurisdiction under KRS 403.822, 403.824, or 403.826. Because jurisdiction does not exist elsewhere, no child custody determination made outside of Kentucky is entitled to deference by the circuit court. And because no other state has jurisdiction, the determination of the Jefferson Circuit Court can be made final and Kentucky can properly be considered the home state of [child].

686 S.W.3d at 213-14.

### 2.     Firearms Prohibitions

The Court of Appeals also reversed the family court on the issue of prohibiting a respondent from possessing firearms, determining that the DVO could not affect a non-resident's Second Amendment right to bear arms without the family court first obtaining personal jurisdiction over the respondent.

We agree with the Court of Appeals so far as it concludes that the "reach" of the family court's DVO cannot affect the Second Amendment rights of non-residents while they are *outside* our Commonwealth's borders, but we find nothing in precedent that would deny our courts the authority to proscribe the possession of weapons *within* our borders regardless of personal jurisdiction. Any time a non-resident enters this state he is subject to its laws and the jurisdiction of its courts. We can find no merit to the argument that, after a court has determined that domestic violence has occurred, nevertheless a non-resident abuser should be allowed to freely enter and carry weapons within our

23

state.[16] In order to effectuate a victim's safety in this state, we need to be able to both prohibit an abuser from approaching the victim and minimize the threat to the victim by keeping the abuser from entering this state in possession of firearms.

We further note that when a respondent has a prior felony conviction, such as the one admitted to by Aldava, such person has previously lost any Second Amendment rights under 18 United States Code (U.S.C.) § 922(g)(1) which prohibits anyone convicted of a felony from owning, possessing, or purchasing firearms anywhere in the United States. If such felon entered Kentucky with a firearm, or obtains a firearm in Kentucky after entering, he would also be guilty of violating KRS 527.040.

### 3. Entry of DVOs into LINK

KRS 403.751(2), which instructs circuit clerks to forward orders of protection for entry into LINK, is not a violation of a non-resident respondent's due process rights. Publication on LINK does not constitute an impermissible "collateral consequence" akin to "enrollment in a central offenders registry" as only generally described in *Spencer*, 191 S.W.3d at 19. Entry on LINK allows law enforcement in our Commonwealth to know of the existence of a DVO, and therefore be able to timely, appropriately, and effectively respond to threats against victims of abuse. LINK serves to "[e]xpand the ability of [Kentucky] law

---

[16] We will not leave unprotected victims who flee to the Commonwealth of Kentucky based on speculation that other states may choose to apply our prohibitions (which are limited to within our borders) more broadly than we do. That is a matter to be addressed in those courts, should that ever occur.

enforcement officers to effectively respond to further wrongful conduct so as to prevent future incidents and provide assistance to the victims." KRS 403.715(2). LINK provides Kentucky law enforcement agencies with information necessary to better thwart criminal activity, including violence, within our borders.[17]

Given the statute's purpose and its scope being effectively contained within our borders such as to protect victims and potential victims within our state, LINK is not violative of non-residents' due process rights.

### III. CONCLUSION

To be clear, the courts of this Commonwealth are authorized to, as effectively as possible, protect children and victims of abuse within the jurisdictional borders of our state. We depart from *Spencer* to the extent that it can be interpreted as categorically prohibiting: (1) temporary awards of custody; (2) submission of DVO orders to LINK; and (3) prohibiting a respondent from possessing firearms within our state borders.

Despite the fact the family court did not recognize that Aldava had waived any defense to the court having personal jurisdiction over him, the DVO entered against Aldava by the family court, including all provisions contained therein, was factually appropriate and legally sound.

---

[17] Examples similar to LINK are found KRS 16.060 (which requires the Commissioner of the Department of Kentucky State Police to collect, classify and maintain information useful for the detection of crime and the identification, apprehension, and conviction of criminals) and KRS 17.110 (which requires city and county police to file felony arrest reports with the Justice Cabinet, Department of Kentucky State Police).

We therefore reverse the Court of Appeals' decision to the extent that we have determined that Aldava waived the defense of personal jurisdiction and was therefore subject to the full extent of DVO protections available in the Commonwealth inclusive of each of those conditions and obligations set forth in the family court's DVO and remand this matter to the family court for further proceedings in accordance with this opinion and our prior decision in *Aldava I.*

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, and Keller, JJ., concur. Nickell, J., concurs in result only by separate opinion.

NICKELL, J., CONCURRING IN RESULT ONLY: Respectfully, I concur in result only and would end the analysis upon a determination that Aldava waived the defense of lack of personal jurisdiction. In my view, the resolution of this threshold inquiry fully disposes of the issues presented by this appeal. Therefore, I would refrain from opining upon the authority of a family court in hypothetical future cases. *Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky. 1992).

COUNSEL FOR APPELLANT:

Samantha Jo Hall


COUNSEL FOR APPELLEE:

John H. Helmers, Jr.
Melina Hettiaratchi
Helmers & Associates